CALDWELL vs. LOCKRIDGE

A settlement made by an administrator, has the force of a judgment. A balance on such settlement, may be found in his favor, without his having made oath or affidavit as required in cases of demands presented against an estate.

2. A *scire facias* is not necessary to revive a judgment of a county court. It is not a court of common law jurisdiction.

3. At the November term, 1838, the administrator having given legal notice, made a final settlement of the estate, had an allowance of $190 42, and resigned his administration. At the same term, but without notice to the administrator, the court set aside the allowance, and upon a new settlement found a balance of $101 53 against the administrator. Held:

1. After settlement, and resignation of his office, the administrator was no longer in court.

2. The county court had power during the term to vacate any order made at that term, but could only do this, after notice to the administrator.

3. The order setting aside the allowance, having been made without any notice to the administrator, is void.

Caldwell vs. Lockridge.

## ERROR to Jackson.

R. G. Smart, for Plaintiff in error.

POINTS AND AUTHORITIES.

1. The final settlement made by Caldwell in 1838, was in every respect in conformity with the law, and from the time of his resignation all his powers then ceased. Revised Statutes 1835, title, Administration, 1st art. sec. 30 & 31.

2. The decision of the county court made at the February term, 1845, in ordering Rachel Lockridge, administratrix, to pay the amount due Caldwell on his final settlement as administrator of Jones Lockridge, deceased, made in 1838, was right and proper. See Revised Statutes of 1835, title, Administration, art. 5, sec. 11, 12, 13 & 14, p. 58, 59. And further, that as soon as Caldwell had made his final settlement and resigned his letters of administration, his powers then ceased, and he was no longer in court, and the court had no further control over him, and any order made by them affecting his rights, was null and void.

3. That the second order of the county court, made in 1838, rescinding *a part* of the final settlement of Caldwell, was null and void, the same having been done without notice to Caldwell, and the whole proceeding an *exparte* one. See Monroe's Ky. Rep. 5 vol. p. 58; 7 Mo. R. p. 465, Smith vs. Ross & Strong.

4. The allowance made to Caldwell at his final settlement by the county court, in 1838, being warranted by the law, and being such an allowance as the court had a perfect right to make, the only way by which the opposite party could take advantage of the same, was by an appeal to the circuit court. See Revised Statutes of 1835, title, Administration, 15th sec. 6 art; also 7 art. 1st sec.

5. The circuit court erred in dismissing the suit in that court, as a new trial should have been had, in case the county court erred in the decision it made. See 8th art. of Administration law, sec. 8.

Hall, for the Defendant in error.

POINTS AND AUTHORITIES.

1. The notice that plaintiff would move the court for an order requiring defendant to pay the amount of the first order, was altogether an informal proceeding in this cause.

Caldwell vs. Lockridge.

2. The order of the Jackson county court, made at its November term, 1838, offered and read in evidence by the plaintiff, Caldwell, is to all intents and purposes a judgment of the court, and as such could only be enforced after *scire facias*, there being no evidence that execution had been sued out upon it within a year and a day after its rendition. See McKinney's admr. vs. Davis, 6 Mo. R. 501; 1 Mo. R. p. 368, Dowsman vs. Potter; 1 Tomlin's Law Dictionary, p. 707; 3 Mo. R. 307; 2 Bac. Abr. 727; 7 Mo. R. 469, Gamble admr. vs. Hamilton admr.

3. The county court had power to rescind the first order upon motion, as it was done at the same term at which it was made (June.) Had the court a right to enter up another order at the same term at which the preceding one was rescinded? See Rev. Statutes Mo. 1835, p. 469; 7 Mo. Rep. p. 320, Ashby vs. Glasgow and others; See also, Bouvier's Law Dic. title, "Term;" also Jacob's Law Dic. title, "Judgment."

4. The first order having been rescinded properly, it was clearly incompetent testimony to warrant the proceedings of the county court, at its term for March, 1844.

5. If the county court erred in rescinding the first order, and entering up the second order, Caldwell could have appealed to the circuit court. Rev. Stat. Mo. p. 63.

6. That as all the pleadings in the county court, by statute, may be "*ore tenus*," the various motions, appearances, testimony, &c., necessary to warrant a judgment in that court, will by a higher court be presumed, unless it otherwise appear by bill of exceptions. Rev. Stat. p. 56.

HICKMAN, for Defendant in error.

### POINTS AND AUTHORITIES.

1. Upon the trial of the appeal from the county court, the circuit court committed no error in reversing the judgment of the county court, and dismissing the case for want of sufficient notice. See Rev. Statutes p. 55 & 56, secs. 5 & 17; and 5 Mo. R. 334.

2. The notice and motion of plaintiff in county court, shows that his claim is founded on a judgment of said county court, and therefore he should have resorted to his writ, of *scire facias*, and not attempt to enforce the collection of said judgment, nor to obtain another one by motion. Rev. Stat. p. 56, sec. 8. Also 6 Mo. R. p. 501.

3. The county court erred in giving judgment in favor of the plaintiff, Caldwell, because, 1st, He had not made oath or filed an affidavit with his claim, as required by law. Rev. Stat. p. 56, sec. 9; and, 2d, Because the judgment entered up was not against the assets of Lockridge, dec., in the hands of his administratrix to be administered; and the circuit court having, in reversing the judgment of said county court, decided in favor of the right party, the supreme court will not now interfere with its decision. 6 Mo. R. p. 250, 469; 7 Ib. 419.

Scott, J., delivered the opinion of the court.

Oliver Caldwell and Rachel Lockridge were appointed administrator and administratrix of the estate of Jones Lockridge, deceased. At the November term of the Jackson county court in 1838, Caldwell having given the requisite notice, made a settlement of his accounts and resigned his letters of administration. At this settlement, the court allowed Caldwell a commission of 6 per cent. on the estate, amounting to $536 21. The settlement left the estate indebted to Caldwell $190 42, and an order was made directing the administratrix to pay him that sum. Afterwards at a subsequent day of the same term, an order was made correcting the former order, disallowing the amount of the commission allowed by that order. The effect of the correction was to bring Caldwell $101 53 in debt to the estate. This order was made without any notice to Caldwell. Afterwards in January, 1845, Caldwell gave the administratrix notice that at the next February term of the Jackson county court, he should move for an order requiring the administratrix to pay him the amount allowed him by the court, at the November term, 1838, when he resigned his letters of administrtion. The county court made the order accordingly. From this order an appeal has been taken to the circuit court, where the following judgment was entered : "Now at this day came the parties aforesaid by their attorneys, and the motion to dismiss the appeal heretofore filed, is taken up, which being seen and heard, and by the court fully understood, is by the court overruled; and thereupon neither party requiring a jury to try the issue herein, all and singular the premises are by them submitted to the court, which being seen and heard and by the court fully understood, the court hereby reverses the judgment of the court below, and for want of sufficient notice to said defendants, it is ordered that the cause be and is hereby dismissed." From this judgment an appeal was taken to this court.

In the first place, it will be proper to notice the nature of the order

made by the county court at the November term, 1838, requiring the administratrix to pay to Caldwell $190 42. From the argument of the cause, and the references made, it seems to have been regarded by the defendant in error as nothing more than the demand against the estate, which must be exhibited and allowed like all other debts against a deceased person's estate. This certainly is an erroneous view of the subject. When an administrator makes his settlement, and a balance is found for or against him, that settlement has the force of a judgment. It is precisely on the footing of all other allowances against an estate, and its payment may be enforced in like manner. A court would not permit an executor or administrator to resign, who was in arrears to an estate, until the balance against him had been settled. He would not thus be permitted to escape the control of the court in coercing the payment of the debts he may owe the estate.

There is no foundation in law for the idea that a *scire facias* was necessary to revive the judgment rendered by the county court at the November term, 1838. Whatever may be the law in regard to the necessity for such writs to revive judgments after a year and a day in courts proceeding according to the course of common law, there is no pretence that such laws are applicable to allowances made against estates in our county courts. By the common law, a judgment against an executor or administrator was an admission of assets sufficient to satisfy it. If suits were instituted on claims, and there were no assets to satisfy them, upon *plene administravit* pleaded, a judgment of assets *quando acciderint* was entered, on which execution could be issued when it was shewn by proceedings on *scire facias* that assets had subsequently come to the hands of the executor or administrator. All claims against an estate are by our laws permitted to be matured into judgments without regard to the means of satisfying them or to the solvency of the estate. There is no such thing as a judgment *quando acciderint.* After a few preferred debts, their class depends upon the time within which they are exhibited. The state of the accounts of the executor or administrator is always known to the courts, and an allowance may be made, and years may elapse before the courts will make an order directing its payment, because from the situation of the assets of the estate, it is seen that there is no money in the hands of the executor or administrator applicable to its payment. The necessity of a *scire facias* arose from the presumption that after a year and a day, a judgment was satisfied. Having a right to an execution during that time, the law contemplated that it would be resorted to in order to obtain satisfaction. But where an execution was stayed by writ of er-

ror or an injunction, the presumption of payment did not arise and no revival of the judgment was necessary. In our county courts, when a judgment is rendered against an estate, the party cannot take out execution, without the order of the court, and the court may, and frequently does refuse to make an order to pay an allowance until the year and a day have elapsed, being governed in making such orders entirely by the situation of the accounts of the executor or administrator.

The cause turns on the legality of the action of the county court at the November term, 1838, in correcting the previous order of the term, without notice to Caldwell. Caldwell having made a settlement of his account and resigned his letters of administration, could he have been considered in court any longer, for any purpose? There are authorities for the position that parties are considered in court for a year and a day after judgment, that being the period within which execution may issue upon it. There is no doubt of the principle, that during the term all the proceedings are in the breast of the court, and they may be altered or vacated, as justice requires. The doctrine that the parties are to be presumed in court for a year and a day after judgment, was repudiated by this court in the case of Laughlin et al. vs Fairbanks, Lisle & Edwards, 8 Mo. R. 367. In that case this court held that the circuit court acted erroneously in setting aside the return endorsed on an execution, without notice to the defendants, and it was further held that in every case of a special motion unless there has been an express or implied waiver of notice, the want of such notice would of itself be sufficient to vitiate the proceedings. Now, whatever may be the law applicable to cases in courts possessing common law jurisdiction, and whose proceedings are in conformity to that law, as was the case above cited, it is manifest that the proceedings in the county courts, in the settlements of accounts of administrators are entirely dissimilar from the course of practice in causes pending in courts of common law. In every suit there must be an *actor* and *reus*. When an administrator comes into court to make a settlement, it cannot with any propriety be said that it is a step in a cause. True any one interested may, in suitable cases, except to the action of the court in making such settlements, and prosecute an appeal to the circuit court, but the settlement may be made without any exception being taken, how then can it be said to be a step in a cause? When a court proceeding according to the course of the common law enters an erroneous final judgment, that judgment may be reversed by a writ of error in a superior tribunal. Not so in proceedings in the county courts. A writ of error does not lie on a final judgment in these courts. The party com-

plaining of any order or proceeding therein, must take the steps required to correct that error of the court at the time it was committed, otherwise he is remideless in an appellate tribunal. In the case now under consideration the administrator, Caldwell had given the regular notice of his intention to resign his letters. He appeared in pursuance of that notice, made a final settlement, and resigned. On what principle could it be said that he was in court after that time for any purpose? Beyond all question the county court during the term had authority to vacate the order that had been made. But that only could have been done according to the principles of justice. No one could be affected by proceedings of which he had no notice. It is a principle of universal justice, that a judgment against a party, without notice of the proceedings is purely void. Although the court may have jurisdiction of the cause, yet if the defendant is not affected with notice of the proceedings, he is not bound by them. When the motion was made to correct the former order, if there was no time during the term to bring in Caldwell by notice, the motion might have been continued and notice given in vacation; and in that way the court would have retained control of the matter. The order obtained by Caldwell was after the notice required by law. That subsequently obtained was without any notice to him. Now, if one or the other of these orders only can stand, how can we hesitate, according to the principles of justice, in determining which shall obtain? It is in vain to say that Caldwell might have appealed. He could only have appealed by being in court during the term, at or after the time at which the order was made, and his complaint is, that the order was made when he was not in court, and when he had no notice that it was necessary to be there. The case of Smith vs. Rice, 11 Mass. R. 507, is one involving the propriety of an order made by a probate court, which affected a person who had no notice of the proceedings. The case is very similar to the one under consideration, and a portion of the opinion is transcribed as showing the views entertained by an able tribunal on this question? "It was said in the argument that as the judge of probate had jurisdiction of the cause, his decree is conclusive: and that the only remedy of the demandant, if aggrieved, was by appeal. This is undoubtedly true in cases where the probate court is acting within its jurisdiction and pursuing the course prescribed by law; if in such a case there is an indiscreet exercise of authority, the only remedy is by appeal. But in the case at bar the very grievance complained of is, that the party had no notice of the pendency of the cause, and of course no opportunity to appeal. Any party aggrieved by the judgment of a justice of the

peace or of a court of common pleas, may appeal if he has had due notice of the suit, and when he has had an opportunity to appeal and neglects it, he cannot afterwards bring a writ of error on such judgment. But if judgment has been rendered on the default of the defendant, without any appearance by him and without a sufficient service of the writ, or in the court of common pleas if a sole defendant be out of the State, and judgment be rendered against him, without the continuance required by statute, the defendant may reverse the judgment by writ of error. So if the party die before judgment rendered against him, his executor may reverse it on error. And in all these cases, it is no objection to the writ of error that the cause was open to appeal, inasmuch as the plaintiff in error had no opportunity to avail himself of that remedy."

"It is then very evident that if the proceedings in the probate court were according to the course of the common law, the decree in question might be reversed for the error before mentioned. But no writ of error lies to the probate court. Their proceedings not being according to the course of the common law, a party situated like the present demandant has no means of revising the decree · and causing it to be annulled or reversed so as to prevent its being produced against him in another cause. He has then a right when it is so produced, to aver and prove its nullity." The other Judges concurring, the judgment is reversed and the cause remanded.