OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1898.

*(Continued from Volume 148.)*

AULL et al. v. ST. LOUIS TRUST COMPANY et al., Appellants.

Division Two, March 28, 1899.

1. **Probate Court:** JUDGMENTS. The probate court is a court of record, and an order of distribution made by it is subject to the usual incidents of such judgments.

2. ———: ———: MODIFICATIONS. A probate court has power over its judgments during the entire term at which they are rendered, and can not be deprived of the power to modify them until the end of the term, except by statute.

VOL. 149 mo—1                                        (1)

Aull v. St. Louis Trust Co.

3. ——: ——: ——: NOTICE: ORDER OF DISTRIBUTION. And where the probate court made an order of distribution in December, and the administrator made distribution in accordance therewith and made report of his action to the court on the next day, and said report was approved and the court adjourned to January 2, and on that day plaintiffs filed a motion that the order be modified because defendants had been paid $18,984 more than their statutory share, and the court adjourned till January 19, and notice of said motion was served on defendants and the administrator, and on said day they appeared and opposed said motion, but it was sustained by the court, which modified its former order and found that defendants had been paid $18,984 too much, and decreed owelty, and no appeal having been taken, the last order of the court became a binding judgment against defendants and remains in full force and effect.

4. ——: ——: ——: DISTRIBUTION. And such order of distribution is subject to be modified, at any time before final judgment, although the estate was distributed in pursuance thereto, and plaintiffs accepted of the benefits thereof and at the time acquiesced therein, and gave receipts for the money received by them reciting that the money is "received by us in satisfaction" of said order.

5. ——: ——: ——: ENFORCIBLE IN EQUITY. And since the probate court is not clothed with the necessary power to enforce an order upon such distributees to restore the excess distributed to them, the plaintiffs may invoke the powers of an equity court to enforce such order and judgment, in order that justice may be accomplished.

6. ——: ——: ——: ——: RECEIPTS. A receipt is always subject to explanation and construction by the circumstances under which it is made, and there is no such sanctity about it as to make it conclusive if there be any good legal reason why it should be held otherwise.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

STEWART, CUNNINGHAM & ELIOT for appellants.

(1)   The order of distribution made by the probate court under authority of Revised Statutes, sections 241, 242 and 243, is the judgment of a court of record, and as such is subject to the usual incidents of such a judgment. R. S. 1889,

secs. 241, 243 and 246; Ladd v. Stephens, 147 Mo. 212; Elliott's Estate, 98 Mo. 379; Coquard .v. Marshall, 14 Mo. App. 30; State v. Grigsby, 92 Mo. 419. (2) A judgment acquiesced in by the parties, the benefits of which are accepted, is not subject thereafter to modification or reversal. The cause is ended and the court which rendered the judgment is dispossessed of jurisdiction over the parties and subject-matter. Hendrick v. Wright, 50 Mo. 311; Cassell v. Fagin, 11 Mo. 207; Pockmann v. Meatt, 49 Mo. 345; Robards v. Lamb, 76 Mo. 192; Robards v. Lamb, 89 Mo. 309; Fisher v. Siekmann, 125 Mo. 180; State v. Lubke, 15 Mo. App. 152; Houck v. Swartz, 25 Mo. App. 20; Waddingham v. Waddingham, 27 Mo. App. 607; People v. Barns, 21 Pac. Rep. 540; 12 Am. and Eng. Ency. of Law, 150a; Black on Judg., sec. 990; Bynum v. Murrell, 6 Hump. 701; Reid v. Hibbard, 6 Wis. 175; Medart v. Bakers Co., 51 Mo. App. 21; Stewart v. Stewart, 20 S. E. Rep. 862. (3) A court of equity has no jurisdiction to partition personal property which has already been partitioned by the probate court, or which is in course of administration. McMillan v. Walker, 57 Mo. App. 220; Boerge v. Langenberg, 42 Mo. App. 7; Price v. Calhoun, 59 Mo. 271; Titterington v. Hoaker, 58 Mo. 593; Ensworth v. Curd, 68 Mo. 282; Hammons v. Renfrow, 84 Mo. 347; French v. Stratton, 79 Mo. 560; Roselle v. Hannon, 103 Mo. 339. (4) A court of equity has no jurisdiction to carry into effect decrees of the probate court which that court is too feeble to enforce for itself. Every court which has power to render a judgment has power to enforce it. If, therefore, the probate court has power to enter the modified decree of partition, there is an adequate remedy at law in that court for the enforcement of the judgment there. If the probate court has no means or power by which to enforce its alleged decree or modified order of distribution, it had no power to make such an order, and there is no judgment to enforce, either in that court or in this cause. Hope .

v. Blair, 105 Mo. 85; Murphy v. De France, 105 Mo. 53; Jones v. Brincker, 20 Mo. 87; Miller v. Meyer, 67 Mo. 248; Standard v. Lacks, 25 Mo. App. 69; Railroad v. Titus, 27 N. J. Eq. 102; Holt Co. v. Cannon, 114 Mo. 514; Elliott's Estate, 98 Mo. 385; Hoffmann v. Hoffmann's Exr.,29 S. W. Rep. 603; Wilson v. Railroad, 120 Mo. 45; Thias v. Siener, 103 Mo. 314.   (5)  Equity will not relieve against a mistake of law.   Grimes v. Sanders, 93 U. S. 55; Hamblin v. Bishop, 41 Fed. Rep. 74; Griswold v. Hazard, 145 U. S. 295; Daly v. Jessup, 72 Mo. 144; Needles v. Burk, 81 Mo. 569; St. Louis v. Priest, 88 Mo. 612; Weinerth v. Trendley, 39 Mo. App. 337.

A. F. ALEXANDER, WM. AULL and WARWICK HOUGH for respondents.

(1) The probate court had full power to modify its judgment of December 6 and 7, 1893, at any time during the same term at which said judgment was rendered.   The power of a court over its.judgments, during the entire term at which they are rendered, is unlimited.  1 Freeman on Judg. (4 Ed.), sec. 90; 1 Am. Law of Admr., pp. 331 and 333; Rottman, Adm'r, v. Schmucker, 94 Mo. 144; Martin v. St. Louis Tobacco Co., 53 Mo. App. 655; Caldwell v. Lockridge, 9 Mo. 358; Price v. Johnson Co., 15 Mo. 433; State ex rel. v. Treasurer of Callaway Co., 43 Mo. 230; Bronson v. Schulten, 104 U. S. 410; Barrell v. Tilton, 119 U. S. 637; Pierce v. Prescott, 128 Mass. 140.   (2)  The session of the probate court on January 24, 1894, at which the modifying order was made, was a part of the same term at which the original order of December 7, 1893, was made.   Fannon v. Plummer, 30 Mo. App. 25; R. S. 1889, sec. 3401. (3) The modifying order of the probate court of January 24, 1894, not having been appealed from, remains in full force and effect, and, however incomplete the same may be, said order is not void, and it unquestionably strikes down all rightful

claim of the St. Louis Trust Company to $18,984 worth of the bonds received by it.   Johnson v. Beazley, 65 Mo. 250; Rosenheim v. Hartsock, 90 Mo. 357.   (4)   Whatever was done by way of distributing the personal property during the term at which the order of distribution was made, was done subject to the right of the probate court to amend or modify said order.   Studebaker Bros. Mfg. Co. v. Hunt, 38 S. W. 1134; Catlin v. Wheeler, 49 Wis. 507; Delta Bldg. & Loan Assn. v. McClune, 6 Pa. Dist. 569.   (5)   The receipts given by the St. Louis Trust Company, and the various heirs, for their respective portions of the bonds and money, covered by the order of December 7, 1893, were not given by way of compromise or settlement of any litigated questions between the distributees of Maria Pomeroy, deceased, and did not conclude said distributees from asking a modification of said order, and claiming what they were lawfully entitled to. Besides, two of the receipts expressly reserved such rights. Catlin v. Wheeler, 49 Wis. 507; Higbie v. Westlake, 14 N. Y. 281.   (6)   The distributees did not derive their right to the bonds and money distributed from the order of distribution; but all the debts having been paid, the title to the personalty descended to, and vested in the distributees, and when the modifying order of January 24, 1894, was entered of record, the title to the personalty involved was not thereby invested in the administrator, but remained in the distributees.   State ex rel. v. Grigsby, 92 Mo. 419; State to use v. Campbell, 10 Mo. 725; State to use v. Stephenson, 12 Mo. 179; State to use v. Morton, 18 Mo. 53; State ex rel. v. Matson, 44 Mo. 305; State ex rel. v. Thornton, 56 Mo. 325. Moorehouse v. Ware, 78 Mo. 100; In re Estate of Elliott, 98 Mo. 379.   (7)   This case is wholly unlike the case of an appeal to a court of errors and appeals, from the judgment of a court in a litigated case which has been satisfied.   There was no accounting on the part of the administrator, and no judgment against him.   There was no judgment against

anyone who was satisfied by payment. The distribution of an estate is analogous to a proceeding *in rem,* and the court has power to correct. Pierce v. Prescott, 128 Mass. 140; Waters v. Stickney, 12 Allen (Mass.) 1; Stetson v. Bass, 9 Pick. (Mass.) 30. (8) The probate court had no power to issue an execution against the St. Louis Trust Company for the excess of bonds and money found to be in its hands. Ford, Adm'r, v. Talmage, 36 Mo. App. 65. (9) A probate court has no chancery powers, and could not compel the St. Louis Trust Company to restore the excess of bonds and money it had received, to the administrator, nor could it compel the trust company to divide the same among the other distributees of the estate. Presbyterian Church v. McIlheny, 61 Mo. 540; Butler v. Lawson, 72 Mo. 227; Davis v. Smith, 75 Mo. 219; First Baptist Church v. Robberson, 71 Mo. 326; Scudder v. Aimes, 89 Mo. 521; Roberts v. Bartlett, 26 Mo. App. 611; Ford, Adm'r, v. Talmage, 36 Mo. App. 65; In re Glover & Shepley, 127 Mo. 153.

BURGESS, J.—On the eighteenth day of August, 1892, Maria Pomeroy, a resident of Lafayette county, died intestate, leaving a large amount of real and personal property in that county, which descended to her heirs. A part of this property consisted of United States bonds of the value of $69,400, and a certain amount of money, which were in the hands of William Norrison and Robert Taubman, administrators of her estate.

Maria Pomeroy left surviving her no father, mother, brother or sister, but she left six nephews and nieces, and the children of four other nephews and nieces, who were dead, as her only heirs at law. The plaintiffs, James, Robert, Wilson and Mary F. Aull, Maria P. Collier and Elizabeth McFadden are the nephews and nieces of Mary Pomeroy; and the other plaintiffs are her grandnephews and grandnieces.

The defendants, Harry H. Lawrence, W. and Frank P. Day, and Anna C. Truesdale, who are represented by the

St. Louis Trust Company, are the children of Maria Pome-
roy's deceased niece, Lavinia C. Day, and are therefore her
grandnephews and grandniece.

The defendants, children of Lavinia Day, at various
times borrowed money from the St. Louis Trust Company,
making various conveyances to secure the payment thereof
by the mortgage, pledge or assignment of their interests in
the estate, which up to that time was undivided. By these
instruments the trust company was given power to collect
and receive the respective interests of the borrowers. The
interest of Harry H. Day was, subject to the lien of the trust
company, placed in its control as trustee for his wife and
minor children, all of whom are parties to this suit.

On November 24, 1893, the heirs filed a petition in the
probate court of said county, stating that the United States
four per cent registered bonds belonging to the estate, amount-
ing to the face value of $69,400 and then worth $1.18, were
not needed to pay debts, and asked that they be divided in
kind. At the hearing of this petition all the heirs were pres-
ent or represented by attorney, and the St. Louis Trust Com-
pany by its attorney and joined in the petition; whereupon
partition was ordered by the court and commissioners ap-
pointed to divide the bonds in kind, equalizing the shares of
the distributees by the application of money in the hands of
the administrators. By consent of all parties interested, the
commissioners divided the bonds among the heirs, giving to
each his or her distributive share, together with such sum in
cash as was necessary to accomplish that end.

All of the distributees received their respective shares
upon this basis of calculation and partition, and receipted for
the same to Robert Taubman, he then being the only surviving
administrator. The trust company, having authority so to
do, took part in these proceedings and in behalf of the Day
heirs or distributees whose interests were pledged to it, re-
ceived from the administrator United States bonds to the

face value of $24,000. The receipts upon their face express to be in satisfaction of the order.

By this order the descendants of each one of the three deceased brothers of Maria Pomeroy took together the share which such deceased brother would have taken, if alive, and $2,938 was added in cash to make the shares equal upon that basis.

By this order of distribution the grandnephews and grandnieces represented by the trust company were given $16,800 in bonds (of the value of $18,984), more than they were entitled to.

On the following day, December 7, 1893, to which day the probate court was adjourned, the commissioners made their report dividing the property according to the interests of the parties as fixed by the order of the court, which was approved on the same day, and a division of the property ordered in accordance with the report. The court was thereafter adjourned to the second day of January, 1894, when all the heirs except those represented by the trust company filed a motion to modify and amend the record and the order by which the interests of each of the several parties in and to the personal property of the estate had been ascertained by the court, upon the ground that the order of distribution was made upon the wrong theory and was erroneous, and should be made to conform to the rights of the parties, for the reason that by the statute of Descents and Distribution, the nephews and nieces of said Maria Pomeroy inherit *per capita,* and the descendants of the nephews and nieces inherit *per stirpes,* and not as ordered by the court. The court was then adjourned to January 19, 1894, for the consideration of said motion.

Due notice of the motion to modify and amend the record, and the order ascertaining and adjudging the interests of the parties, and the order of distribution having been given

to the administrator and to the trust company, both of them appeared and filed objections to said motion, on the nineteenth day of January, 1894, the day to which the court was adjourned.

The probate court after a full hearing did, on the twenty-fourth day of January, 1894, during the same term of court at which the order of distribution was made, enter a decree vacating and setting aside so much of its former order made at the same term and on the sixth day of December, 1893, as declares and adjudges the interests of the heirs of said Maria Pomeroy, deceased, in her said estate, and proceeded to find the interests of the heirs and distributees of the estate in accordance with law, and by its amended decree found that the St. Louis Trust Company as trustee and attorney in fact for Lawrence W. Day, Frank P. Day, Harry H. Day and Anna C. Truesdale, received one-third of the personal estate of deceased ordered to be distributed, being one-twelfth for each of said named distributees, amounting in the aggregate to $24,000 in United States bonds at their par value, cash value $27,120, when in fact and under the law, the distributees represented by St. Louis Trust Company were entitled to one-fortieth each of said amount ordered to be distributed, or in the aggregate one-tenth, amounting to $7,200 of said bonds at their par value, cash value of $8,136, and that the St. Louis Trust Company received as such trustee and attorney in fact in said United States bonds, $16,800 (cash value of $18,984) more than it ought to have received, or was entitled to receive, under the law, as the shares of Lawrence W. Day, Frank P. Day, Harry H. Day, and Anna C. Truesdale, and that the St. Louis Trust Company was still in the possession of said bonds, and said court ordered that the said St. Louis Trust Company should refund the amount of $16,800 in bonds (being of the value of $18,984) to these plaintiffs, in the amounts and proportion to which each was entitled, as set forth in the amended decree, or in lieu thereof

should pay the money value thereof therein stated, as owelty. From this judgment of the probate court no appeal was taken by the St. Louis Trust Company or by the administrator.

Demand was made by the plaintiffs upon the St. Louis Trust Company, on the sixteenth day of March, 1894, and on the seventh day of April, 1894, for their interest in the bonds received by the St. Louis Trust Company in excess of what it was lawfully entitled to receive which was refused.

Thereupon the present suit was instituted for the purpose of recovering the amount received by the St. Louis Trust Company in excess of what it was entitled to receive, and also to prevent said company from seizing upon a tenth of the $33,000 still remaining in the hands of the administrator, as shown by his report which, it is alleged in the petition and admitted by their answer, they are endeavoring to get in addition to the $18,984, which they have already received in excess of what was due them.

The petition sets forth in full all of the orders, motions, adjournments, and judgments referred to in the foregoing statement, and all of the facts as to Maria Pomeroy's estate and her heirs, and their relationship as heretofore given.

The answer of the St. Louis Trust Company and the Day heirs admitted the important facts as alleged by the plaintiffs, called for the proof of heirship of the parties interested, and pleaded the interest of the St. Louis Trust Company in the subject-matter as the lender of the several sums of money to the Day heirs, and its right to be reimbursed in the amount of the same, with interest and expenses. The answer pleads an estoppel of the plaintiffs to claim any re-distribution of the personal property partitioned by reason of their voluntary acceptance of the distribution made under the orders of the probate court, and avers want of jurisdiction and power in the probate court to change or modify its order of distribution after it had been carried out by the parties interested. The answer further sets up an estoppel *in pais*

against the plaintiffs, by reason of their statements and conduct in inducing an erroneous computation of the interests of the Day heirs, which tended to mislead the defendants, to their prejudice.

The answer of the administrator of the estate of Maria Pomeroy pleaded the finality and binding character of the acts of the administrator in carrying out the order of distribution and satisfying it as a judgment in favor of the parties interested.

While the loans by the trust company to the Day heirs were being negotiated, there was pending in the circuit court of Lafayette county a suit by the heirs of Maria Pomeroy, for the partition among them of the lands of which she died seized, in which it seems to have been recited in the petition that the four distributees, Lawrence W., Harry H., and Frank P. Day and their sister Anna C. Truesdale, were entitled jointly to one-third part thereof, and by this defendant claims it was misled, and that plaintiffs should now be estopped to assert to the contrary, but this claim is not borne out by the testimony, which shows that it relied upon information derived from the Day heirs and other sources. The Day heirs are insolvent.

Under the pleadings and evidence the court found the issues for plaintiffs; that the judgment and decree of the probate court of Lafayette county of January 24, 1894, amending and correcting its previous orders of December 6, and December 7, 1893, remained in full force and unappealed from and further found as follows:

"That the St. Louis Trust Company refused to comply with the terms and requirements of said modified judgment and decree of said probate court by dividing the $24,000 in bonds, in the manner according to the proportions set forth in said judgment, so as to allot to the several plaintiffs herein their respective shares in the same, amounting in the aggregate to $16,800 of said bonds, or to pay to the plaintiffs

herein the cash value of their several shares as owelty there-
for, although having due notice thereof, and being requested
so to do, whereby the said $24,000 in bonds, by virtue of the
modified judgment and decree, and the refusal aforesaid of
said defendant, the St. Louis Trust Company, to pay owelty,
were left and remained undivided between the plaintiffs and
defendants, and the said plaintiffs and defendants became and
were part owners thereof in the proportion set forth in said
modified judgment, and the court further finds that the de-
fendant, the St. Louis Trust Company, while the motion for
the modification of the order of partition and distribution
of the 7th day of December, 1893, was pending in said pro-
bate court and with notice thereof, did sell and convert the
said bonds into cash which it now holds subject to the judg-
ment of this court herein.

"That by virtue of said judgment and decree, and the
refusal of the St. Louis Trust Company to comply with the
same, and its sale of the said bonds, the plaintiffs are entitled
to have and receive as against the said defendants, Lawrence
W. Day, Frank P. Day, Anna C. Truesdale and Georgia B.
Day, Burnham Day and Nellie C. Day, minor children of
Harry H. Day, deceased, and as against the St. Louis Trust
Company in its own right, and as trustee and at-
torney in fact for said defendants, the cash value
of the said $16,800 of bonds received by said St.
Louis Trust Company in excess of what it should
have received, as the legal representative as afore-
said of said defendants, and sold by it, which said cash value
amounted, as adjudged by said probate court, to $18,984.

"That no adequate remedy at law exists to enforce the
said judgment and decree of the said probate court of Lafay-
ette county, rendered by it as aforesaid on the 24th day of
January, 1894, or to compel the St. Louis Trust Company to
account for the cash value, as ascertained by said probate
court, of the said bonds so sold by it as aforesaid, and it is

therefore ordered, adjudged and decreed by the court that the defendant, Taubman, administrator, as aforesaid, go hence without day, and that the plaintiffs herein have and recover of the said defendant, the St. Louis Trust Company, the sum of $18,984, the same being the cash value of the proportion of said bonds awarded by the terms of the said modified judgment of the said probate court in the aggregate, to the plaintiffs, together with interest thereon from the 24th day of January, 1894, at the rate of six per cent per annum, said cash value with said interest thereon amounting in the aggregate to the sum of $21,796.80, which said aggregate sum shall be divided among and distributed to the plaintiffs herein by the said St. Louis Trust Company in the proportion set forth in the said modified judgment and decree of the probate court of the county of Lafayette and State of Missouri, as follows, to wit: To the said James Aull, Robert Aull, Mary F. Aull, Wilson Aull and Maria P. Collier, each the sum of $3,113.83; to Eliza McFadden the sum of $1,-556.91; to John Aull, Joseph Aull, Elizabeth Aull, Maria P. Hendrickson and Alfred Aull each the sum of $311.38; to Robert Tripple and Mary E. Patton, each the sum of $778.45; to Margaret L. Mattis, Mary I. Hart, Sarah E. Hendron and Eliza Bicking, each the sum of $389.23."

From which decree the St. Louis Trust Company has appealed to this court.

There is no question but that the probate court of Lafayette county is a court of record, and that the order of distribution made by it is subject to the usual incidents of such a judgment, but it does not necessarily follow that it did not have full power and authority to modify its judgment of December 6 and 7, 1893, at any time during the same term at which it was rendered. The power of a court over its judgments during the entire term at which they are rendered, is one of its common law powers, of which it can only be deprived by statutory enactment. [1 Freeman on Judgments (4 Ed.), sec. 90.]

In speaking of the power of these courts over their judgments in Rottmann v. Schmucker, 94 Mo. loc. cit. 144, it is said: "That a court of general jurisdiction, proceeding according to the course of the common law, has unlimited power during the whole of the term over its judgments rendered at such term, is a rule of universal application. [Freeman on Judgments, sec. 90.] Until the end of the term its judgments are in the breast of the court, and may be modified, vacated, or set aside, as justice demands, becoming absolute only upon the adjournment of the court for that term, and no good reason is perceived why the same rule should not apply to those judgments of the probate court, whose verity is as unquestionable after they become absolute as those of the circuit court." [Citing Caldwell v. Lockridge, 9 Mo. 362; Price v. Johnson Co., 15 Mo. 433; State ex rel. v. Treasurer of Callaway Co., 43 Mo. 228; Bartling v. Jamison, 44 Mo. 141; McCabe v. Lewis, 76 Mo. 296.]

In Caldwell v. Lockridge, 9 Mo. 362, the administrator having given legal notice of his intention to make final settlement of the estate at the November term, 1838, of the court, had an allowance of $190.42 in his favor, and resigned his administration. At the same term, but without notice to the administrator, the court set aside the allowance, and upon a new settlement found a balance of $101.53 against the administrator. And it was held that the court had power during the term to vacate any order made at that term, but could only do so after notice to the administrator.

In the case at bar defendants not only had due notice of the motion to set aside and correct the order of distribution theretofore made, but were present and resisted the motion, and are clearly bound by the result of the motion.

It is equally as clear that the session of the probate court on January 24, 1894, at which the modifying order was made, was but a continuation of and part of the same term at which the original order of December 7, 1893, was made [Fannon

v. Plummer, 30 Mo. App. 25; R. S. 1889, sec. 3401], and this last order not being appealed from remains in full force and effect.

Defendants, however, claim that as the judgment of December 7, 1893, was acquiesced in by the parties, and the benefits thereof accepted by them, it was not thereafter subject to modification or reversal, but that the cause was ended and the probate court shorn of its jurisdiction over the parties and subject-matter. Upon the other hand it is argued for the plaintiffs that whatever was done by way of distributing the personal property during the term at which the order of distribution was made, was done subject to the right of the court to amend or modify said order. In the absence of any averment in the petition showing that plaintiffs are seeking relief upon the ground of mistake or fraud, this we conceive to be the important point involved in this litigation.

The general rule is that when the benefits of a judgment are accepted by a party entitled thereto, the judgment is not thereafter subject to modification or reversal, but that the cause is ended, and the court which rendered the judgment without further control over it. Thus where a plaintiff who has recovered a judgment, receives satisfaction of the same he can not afterwards sue out a writ of error to reverse it. [Cassell v. Fagin, 11 Mo. 207; Pockman v. Meatt, 49 Mo. 345; RoBards v. Lamb, 76 Mo. 192; Fischer v. Siekmann, 125 Mo. loc. cit. 180; Houck v. Swartz, 25 Mo. App. loc. cit. 20; Waddingham v. Waddingham, 27 Mo. App. loc. cit. 607; Medart v. Baker's Mfg. Co., 51 Mo. App. 19; People ex rel. v. Burns, 21 Pac. 540; 12 Am. and Eng. Ency. of Law, 150a; Reid v. Hibbard, 6 Wis. 175; Stewart v. Stewart, 20 S. E. 862; Albright v. Oyster, 60 Fed. 644.]

But in none of these cases was the question as to what effect the modification of a judgment at the same term at which it is renderd, which materially changes the rights of the parties thereto, or their privies who have received the

benefits of the original judgment, has, if any, upon such persons.

In Studebaker Bros. Mfg. Co. v. Hunt, 38 S. W. loc. cit. 1135, it is said: "The court, under a well settled principle, had full control over its judgment during the term, and could modify its judgment, or the entry thereof, without notice. A party is not warranted in relying on a particular entry remaining unchanged, when he knows, as he must, that the entry is subject to be modified or set aside by the court at any time during the term."

In Catlin v. Wheeler, 49 Wis. 507, the legacies of the plaintiffs were paid in manner and amount strictly according to their determination and the construction of the will by the circuit court before any appeal from such judgment of construction was taken to the Supreme Court, and while the judgment of the circuit court was in full force and effect. Receipts in full were given for said legacies in view and in consideration of such judgment, and predicated upon it, and induced by it; and it was the understanding of all the parties at the time that they were paid in full and according to the will of the testator. Thereafter on appeal to the Supreme Court, the judgment of the construction of the will was reversed, and another and different construction of it ordered, by which it became manifest for the first time, that the plain-tiffs had received less than they were entitled to under the will, and their legal title to the residue was adjudicated and established. The other legatees who had received nothing under the first construction of the will by the circuit court, had received their legacies in full according to the construction of the will ordered by the Supreme Court. The plaintiffs asked that their right to the balance of their legacies, so determined by the Supreme Court in the construction of the will, be established, notwithstanding the receipts. It was held that the receipts were not conclusive of their rights.

In the case in hand all receipts that were given by the

respective legatees were upon the basis of the first order of distribution, and while the subsequent modification of that order materially changed the very basis of those receipts, defendants had no right to rely upon the first order remaining unchanged, when they must have known that the order was subject to be modified or set aside by the court at any time during the term at which it was made. And it makes no difference that the receipt given by the St. Louis Trust Company recited upon its face that "said bonds are delivered to us in compliance with, and are received by us in satisfaction of an order of the probate court of Lafayette county, Missouri, made December 7, A. D. 1893," as there is no such sanctity about a mere receipt which makes it conclusive if there be any good legal reason why it should be held otherwise, and which is always subject to explanation and construction, in view of the circumstances under which it is given.

It is further insisted that the probate court exceeded its powers and jurisdiction in attempting to enter the order or decree of January 24, 1894; that under the statute (R. S. 1889, secs. 241, 242, 243), when the commissioners appointed to partition the personalty of the estate brought in their report the sole function of the court was to approve or disapprove their action, and that it had no power after its approval of the report of the commissioners to adopt the report in part, and to change or modify it according to its own notions of a proper partition. The court had jurisdiction over the subject-matter and of the parties. And by its order of January 24, it vacated so much of the former decree as passed title to the trust company to the property received by it.

It also fixed the extent of the interest of that company in the estate of the decedent, and in the bonds now held by it, as well also as the interest of each of the plaintiffs in said

bonds, and ordered the trust company to turn over to plaintiffs the property which it had improperly received. And while this order is incomplete as to some other matters, it is not void with respect to the distribution of the property.

A further contention is that a court of equity has no inherent power to enforce or carry into effect an attempted judgment of a statutory court which is in its nature beyond its jurisdiction, or which it is too lacking in power to enforce for itself.

The record discloses that the St. Louis Trust Company, through the Day heirs under an erroneous order to which they were parties, which was thereafter set aside, received bonds not needed to pay debts against the estate, and to which the heirs were entitled, of the face value in amounts which could not be divided without being done so equally and which they must under the circumstances be regarded as having received for plaintiffs and for their respective use and benefit.

It was not because of any fault or misconduct upon the part of plaintiffs that the St. Louis Trust Company loaned to the Day heirs moneys upon an erroneous order of the probate court; upon the contrary in so doing the company seems to have relied upon the information of its own representatives with respect to their interests in the bonds and cash as fixed by said order to which they were parties, which it must have known the court had the power to modify at the same term at which it was made. To permit the trust company to retain the property, and not respond to plaintiffs for its value under the circumstances, would we think be unjust and unconscionable.

But the probate court is not clothed with the necessary power to enforce its order against the St. Louis Trust Company in behalf of the plaintiffs or of the administrator, for the bonds received by it. Unless, therefore, the aid of a court of equity can be invoked in the enforcement of its order

and judgment, justice will not be accomplished. It is under just such circumstances that the remedy afforded by such court may be availed of in order that justice may be done in the premises. Finding no reversible error in the record the judgment should be affirmed, and it is so ordered. GANTT, P. J., and SHERWOOD, J., concur.