## STATE OF MISSOURI ex rel. SCHREIBER, Respondent, v. DICKMAN and THE AMERICAN BONDING COMPANY OF BALTIMORE, Appellant.

### St. Louis Court of Appeals, April 30, 1907.

1. **EXECUTIONS: Exemptions: Wrongful Levy.** It is the duty of a sheriff to notify an execution debtor of his statutory exemption rights before making a levy under the execution, and if he fails to give such notice, the sheriff is liable on his bond for the damage to the debtor caused thereby. He is likewise liable for damage to the execution debtor caused by a grossly excessive levy.

2. ——: ——: ——. An execution defendant damaged by a levy without notice, or by an excessive levy, can recover from the sheriff upon his bond the damage sustained, although he might have proceeded by motion or otherwise to set aside the levy and sale which caused the damage.

3. **PRACTICE: Instruction.** It is not error to refuse an instruction upon an issue which there is no substantial evidence to support.

4. **EXECUTIONS: Exemptions: Wrongful Levy: Void Sale.** The fact that the sale of the homestead of an execution defendant under an execution is void does not prevent a recovery upon the sheriff's bond for the damage caused thereby, where the fact that the sale was void does not appear upon the face of the deed nor in the proceedings. The execution defendant had a right to remove the cloud caused by the sheriff's deed at the expense of the sheriff who created it.

5. ——: ——: ——: Damages. Where the property of an execution defendant, including his homestead and other real estate, was sold without notice to him of his exemptions, he could recover from the sheriff on the latter's bond the amount paid by him to recover his property and the sheriff was not entitled to a set-off for the amount of the judgment and costs under which the sale was made.

State ex rel. v. Dickman.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Johnson, Houts, Marlatt & Hawes* for appellant.

(1) If the defendant Dickman, as sheriff, levied upon and sold relator's property without apprising him of his exemption rights, he could have had the levy and sale set aside by timely application to the court. Stinson v. Call, 163 Mo. 323. (2) As to the levy upon and sale of that part of relator's property which was his homestead, no action for damages will lie against the sheriff and his sureties, because the purchaser of such homestead acquired no title and the relator therefore suffered no injury. Kendall v. Clark, 10 Cal. 17, 70 Am. Dec. 691; Trawick v. Martin-Brown, 79 Tex. 460. (3) The levy upon and sale of a homestead in Missouri is void. Broiles v. Cox, 133 Mo. 242; Creech v. Childers, 156 Mo. 338. (4) No recovery can be had for merely casting a cloud upon title to property unless it is alleged and proven to have been done maliciously. Graham v. Reno, 5 Colo. App. 330; Stark v. Chitwood, 5 Kan. 141; Walkley v. Bostwick, 49 Mich. 374; Dodge v. Colby, 37 Hun 515; Henry v. Dufihlo, 14 La. 48; Chesbrough v. Powers, 78 Mich. 472. (5) Relator, in paying $500 to Graber for the reconveyance of his property, also settled his indebtedness to Graber, consisting of the judgment, interest and costs in favor of Graber and against Relator. To the amount thus paid upon his just indebtedness he was not damaged, and the law will not permit him to recover therefor. Stow v. Yarwood, 14 Ill. (4 Peck.) 424; Bates v. Courtwright, 36 Ill. 518; Tripp v. Grouner, 60 Ill. 474; Prescott v. Wright, 6 Mass. 20; Pierce v. Benjamin, 31 Mass. (14 Pick.) 356, 25 Am. Dec. 396; Curtis v. Ward, 20 Conn. 204.

*Rassieur, Schnurmacher & Rassieur* for respondent.

(1) (a) The sheriff made himself and his surety liable for such excessive levy: Silvers v. McNeil, 52 Mo. 518; Crocker on Sheriffs, secs. 432, 483, 864; 25 Am. and Eng. Ency., 701. (b) And for his failure to notify relator of his statutory exemption rights: State ex rel. v. Barada, 57 Mo. 562; Paddock v. Lance, 94 Mo. 283; State ex. rel. v. Barnett, 96 Mo. 133; State ex rel. v. Lindsay, 73 Mo. App. 473; State ex rel. v. O'Neill, 78 Mo. App. 20. (2) While the sale of homestead was void, yet such sale, and the deed pursuant thereto, created a cloud on relator's record title, which he had the right to remove at the cost of those who created it. Harrington v. Utterback, 57 Mo. 519; Vogler v. Montgomery, 54 Mo. 577. This being merely an application of the general rule which relieves against clouds on title, although created by void proceedings, where the invalidity does not appear of record and extraneous evidence is required to establish it. Henman v. Westheimer, 110 Mo. App. 195; Smith v. Taylor, 78 Mo. App. 634; Bank v. Davidson, 40 Mo. App. 425; Verdin v. St. Louis, 131 Mo. 80; Gardner v. Terry, 99 Mo. 526. (3) The measure of damage, if relator had not been able to procure a reconveyance from the purchaser at the sheriff's sale, would have been the fair market value of the property wrongfully sold, at the date of sale, with legal interest to the date of trial. State to use v. Samuels, 28 Mo. App. 649; State to use v. Bacon, 24 Mo. App. 403; Walker v. Borland, 21 Mo. 289; Baker v. Railway, 52 Mo. App. 602; State ex rel. v. Hope, 121 Mo. 34.

STATEMENT.—Defendant Dickman was sheriff of the city of St. Louis. The other defendant was surety on his official bond. The petition alleges various breaches of the bond, resulting in substantial damage to plaintiff. We adopt the following statement of some of the facts developed at the trial from plaintiff's printed statement of the facts:

"On March 24, 1903, one A. Graber recovered a judgment before a justice of the peace against the Great Western Coffee & Tea Co., for $189.81 and costs. The company appealed to the circuit court, and relator Schreiber became surety upon its bond in the sum of $400. On December 14, 1903, this judgment was affirmed in the circuit court, and judgment was there entered against said Great Western Coffee & Tea Co., and relator, for the original amount together with costs. On May 3, 1904, an execution was issued upon the judgment, and on May 6, 1904, the sheriff levied the same on three lots of ground belonging to relator, fronting one hundred feet each, or three hundred feet in the aggregate, on Calvary avenue, in the city of St. Louis, and also upon relator's dwelling house and lot, occupied by him as his homestead, on Armand street, in said city. According to the undisputed evidence, the vacant property was worth at least $3,000, and the homestead at least $4,500. Relator, at the time, was the head of a family, and was entitled, without question, to claim as exempt from levy, seizure and sale, the homestead property; and entitled, moreover, to claim $300 as exempt out of the unimproved property.

The sheriff advertised all of this property for sale, and sold it in lump, to Graber, the execution plaintiff, for $150. Relator learned of the sale after the purchaser placed his deed of record, and took immediate steps to recover back his property. On the advice of his counsel, he succeeded in securing a quitclaim conveyance from Graber for $500, Graber first demanding $750, but finally accepting the $500.

"At the time of the levy, and at the time of the sale, the relator was personally known to the sheriff, and his place of business was directly across the street from the sheriff's office. His residence address was written on his qualification, as a surety, before the justice, which

qualification was attached to the appeal bond, and was a part of the files in the case out of which the execution was issued."

The sheriff's deputy to whom the execution was delivered, testified he was unable to find plaintiff and left a notice in writing at his residence with a female inmate thereof, notifying plaintiff of the issuance of the execution and of his statutory exemption rights. Plaintiff's evidence tends to show no such notice was left with any inmate of his residence at any time, by defendant, or any one else. In addition to the five hundred dollars paid by plaintiff to Graber for a reconveyance of his property, plaintiff's testimony tends to show he expended other sums of money for attorney's fees and other costs. The breaches of the bond assigned, briefly stated, are as follows:

"(1) In the making of an excessive levy; (2) In a failure to notify relator of his exemption rights; (3) in a failure to apprise him of his homestead rights; (4) in a levy and sale of his homestead; and (5) in the sale of his unimproved property without his being afforded an opportunity of selecting his exemptions out of the same."

The court gave the following instructions on the measure of damages:

"If the jury find for the plaintiff, they will assess his damages at such reasonable amount as they believe from the evidence he was necessarily compelled to pay the purchaser in order to secure back from the purchaser at the execution sale, the title to the property sold by defendant Dickman; but in no event will their verdict exceed the reasonable market value of the property at the time of sale, or $1,000, the amount sought to be recovered by relator."

Verdict and judgment for plaintiff for five hundred dollars.

BLAND, P. J. (after stating the facts.)—1. De-
fendants offered an instruction in the nature of a de-
murrer to the evidence. The refusal to grant this in-
struction is assigned as error. It is the duty of the sher-
iff to notify the execution debtor of his statutory exemp-
tion rights before he makes a levy to satisfy the execu-
tion (R. S. 1899, sec. 3163; Linck v. Troll, 84 Mo. App.
49; Stinson v. Call, 163 Mo. 323, 63 S. W. 729), and if
he fails to give the notice and the debtor is damaged
thereby, the sheriff is liable on his bond. [The State to
use v. Carroll, 9 Mo. App. 275; State ex rel. v. O'Neill,
78 Mo. App. 25; State to use v. Barada et al., 57 Mo. 562;
State ex rel. Lewis v. Barnett, 96 Mo. 133, 8 S. W.
767.] Plaintiff's evidence tends to show the sheriff
failed to notify him the execution had been issued or
apprise him of his statutory exemption rights, although
his place of residence in the city of St. Louis was known
and his place of business was across the street from the
courthouse, and his property had been sold under the
execution and a deed made to the purchaser and placed
of record before he knew or was informed of any of the
proceedings. Plaintiff's evidence also tends to show the
levy was on seventy-five hundred dollars worth of real
estate to satisfy a judgment of one hundred and eighty-
nine dollars and eighty-one cents, a levy so grossly ex-
cessive as to be oppressive. Plaintiff's evidence also
shows his homestead was levied upon and sold without
his knowledge or consent. This evidence tends to estab-
lish not one but several breaches of the bond sued upon
and was sufficient to entitle the plaintiff to have his case
submitted to the jury.

2. Defendants contend that plaintiff's remedy was
to move the court to set aside the levy and sale. Plain-
tiff might have availed himself of this remedy, if he
had been apprised of the proceedings at the term of
court at which the sale was made and before the pur-
chaser at the sale received his deed and had it recorded

(Stinson v. Call, supra; Mechanics' Bank v. Pitt et al., 44 Mo. 364), but after the deed had been executed and recorded; we think a motion to set aside the levy and sale would have been too late and only a proceeding in equity would have been available for the purpose. [Force v. Van Patton, 149 Mo. 1. c. 450, 50 S. W. 906, and cases cited.] Besides, plaintiff was not driven to this remedy to entitle him to sue for the breaches of the sheriff's bond alleged in the petition. If in a suit by A against B, A should allege in his petition that when his back was turned, he (B) unlawfully, wrongfully, and maliciously assaulted him (A) by striking him on the back of the head with a club, producing an injury resulting in damages, could B plead as an excuse for the assault or in mitigation of the damages, that A had time and opportunity to have avoided the blow and should have done so by turning his head at the opportune moment to see the impending blow and then have jumped forward out of reach of the club before the blow was dealt? Such a defense would be as reasonable as the contention here made, that plaintiff should have moved to set aside the levy and sale.

3. Defendants asked the following instruction, which the court refused:

"The court instructs the jury that in no event can the plaintiff recover for the amount of money, if any, paid by him on account of the judgment, interest and costs adjudged against him in the suit in which his property was levied upon and sold."

Defendants undertook to show the five hundred dollars plaintiff paid Graber was to satisfy the judgment, interests and costs, and Graber's attorney's fees in procuring the judgment. Defendants' evidence tends to show that Graber accepted the five hundred dollars, for the reason that sum was sufficient to pay the judgment, costs and all the expense he had been put to in the whole matter. But there is no evidence whatever that

these matters were discussed between plaintiff and Graber and agreed upon by them as a basis of the settlement, or that the judgment was in fact satisfied by Graber, nor is there any evidence tending to show that plaintiff had in mind the settlement of the judgment when he offered to pay Graber five hundred dollars for a reconveyance of his property. There is, therefore, no substantial evidence upon which to base the refused instruction.

4. It is insisted that plaintiff could recover nothing on account of the sale of his homestead, for the reason the sale as to the homestead was absolutely void. The fact that the sale was void did not appear on the face of Graber's deed nor from any of the proceedings leading up to its execution, therefore, the deed created a cloud upon the title which plaintiff had a right to remove at the cost of the sheriff, who created it (Harrington v. Utterback et al., 57 Mo. 519; Henman v. Westheimer, 110 Mo. App. l. c. 195, 85 S. W. 101), viz., what would be a reasonable expenditure in a suit to set aside the sheriff's deed.

5. It is contended by defendants that they are not liable in damages, for the reason it is not shown in the evidence that the sheriff acted maliciously in making the levy and sale—a novel doctrine to apply to the tortious taking and conversion of plaintiff's property. The general rule, in such cases, for the measurement of the damages, is the value of the property wrongfully appropriated. [Curtis v. Ward, 20 Conn. 204.] There are exceptions to the rule, as where the property has been returned to the owner and received by him, the return of the property goes in mitigation of the damages. In this case the property was returned or recovered by plaintiff in consideration of the payment of five hundred dollars, in addition to which he was put to other expense in procuring the reconveyance. The jury, how-

ever, awarded him only the cash paid for the reconveyance; he was clearly entitled to this much, though we do not approve the instructions on the measure of damages.

6. A further contention is made that the damages should have been offset by the amount credited on the execution as realized from the sale over and above the costs. This point was not made in the court below and cannot be raised on the appeal for the first time, nor do we think this offset is available to defendants in this action; their liability is that of a trespasser and the judgment creditor's rights (who is not a party to this suit) cannot be interposed for the purpose of reducing or mitigating plaintiff's damages. [Isaacs v. McLean, 106 Mich. 79.]

The judgment is affirmed. All concur.