State ex rel. Nolen v. Nelson.

THE STATE ex rel. JOHN H. NOLEN et al. v. JACOB NELSON, Treasurer of Andrew-Nodaway Drainage District.

In Banc, October 7, 1925.

1. **MANDAMUS: Brought in Supreme Court.** The Supreme Court (by the Constitution) has original jurisdiction in mandamus cases, and the issuance of the writ is always discretionary, but once issued the court will usually follow the case to the end, and will not refuse to assume further jurisdiction because the case could have been tried in the circuit court.

2. ———: ———: **New Statute.** The preliminary writ in mandamus is well merited at the hands of the Supreme Court in a case in which a public interest is involved under statutes not previously construed by this court, and especially where such statutes relate to proceedings in mandamus to compel the payment of a warrant issued by a public corporation.

3. ———: **To Compel Payment of Warrants Issued by Drainage District: Statutes Relating to Counties.** The evident purpose of the statutes (Secs. 4579, 4580, R. S. 1919) was to place warrants issued by a drainage district upon the same plane as county warrants, and to make the laws applicable to county warrants likewise applicable to drainage district warrants, and by Section 4580 mandamus is specifically given as a remedy to enforce rights growing out of the organization or administration of a drainage district organized under the Act of 1913 (Laws 1913, p. 321).

4. ———: **As Remedy: To Compel Treasurer to Pay Warrant Issued by Board.** The board of supervisors of a drainage district organized in the circuit court has legal authority to issue warrants in payment for the services of its engineer, and' where there is no charge that fraud was employed in their procurement and there were funds in the treasury out of which, after the warrants were protested for lack of funds, they could later have been paid, the court

will by mandamus compel the treasurer to whom they were directed to pay them.

5. ————: Drainage District: Legal Authority of Board to Issue Warrant. The test whether mandamus will lie to compel the treasurer of a drainage district to pay a warrant ordered and issued by its board of supervisors is dependent upon the fact whether or not the board was empowered to audit the claim and direct the issuance of the warrant. If it had no power to audit the claim such lack of power is a good defense to a suit to compel the treasurer to pay it. Whether the auditing act be denominated a judgment or settlement or order, the legal effect is the same, and absent fraud or possible mistake in the procurement of the warrant its issuance acknowledges and fixes liability.

6. ————: ————: ————: Contract with Engineers: Unregistered Fictitious Name. A contract with a co-partnership composed of three named engineers doing business under the name of "The Capital Reclamation Company" and denominating said three persons as "the engineer," and stipulating what they as "engineer" shall do and what compensation they shall receive for their services to the drainage district, shows on its face that it is a contract with a co-partnership, and that the board of supervisors who approved it and their president who signed it knew with whom they were contracting, and the statute (Laws 1919, p. 621), declaring that every name under which any person shall do business other than his true name is a fictitious name and that it shall be unlawful for any person to engage in business under a fictitious name without first registering the same with the Secretary of State, has no application to such a contract.

7. ————: ————: ————: ————: ————: Estoppel. A board of supervisors of a drainage district which entered into a contract with named engineers doing business under the firm name of "The Capital Reclamation Company," accepted the services of the engineers, ordered six warrants issued in payment therefor, paid three of them and protested the other three "for want of funds," is estopped to assert that said firm name was fictitious and not registered in the manner required by law, when mandamus is brought to compel the treasurer of the district to pay said protested warrants and he in his return acknowledges that at the time of the institution of the suit he had on hand money enough to pay the warrants and all other obligations of the district.

8. ————: ————: ————: Inefficient Performance of Work: Power to Recall Warrant. Where the contract between the engineers and board of supervisors of a drainage district provided that one-half of certain stipulated fees should be paid to the engineers "upon acceptance and adoption by the board of supervisors of the report

of the engineer as the plan of reclamation," six warrants issued in pursuance to this clause, after the plan had been' adopted, were for a claim which, the board had a right to audit and pay, and it will be presumed that they had evidence before them upon which to determine whether the contract had been faithfully performed, and no subsequent act of the board can alter that determination; but where three of such warrants have been paid, and mandamus has been brought against the treasurer to compel him to pay the remaining three, he will not be heard to defend, on the ground that the work was not efficiently done, but there being no allegation that the warrants were procured by fraud, and the return admitting that when the suit was brought there were funds on hand out of which the warrants could have been paid, liability became fixed, and the alternative writ will be made absolute.

Corpus Juris-Cyc. References: Courts, 15 C. J., Section 511, p. 1078, n. 34.   Drains, 19 C. J., Section 182, p. 693, n. 67; Section 183, p. 654, n. 87 New; Section 300, p. 761, n. 23.   Mandamus, 38 C. J., Section 16, p. 547, n. 86; Section 367, p. 750, n. 84, 98 New; Section 524, p. 827, n. 2, 4.   Names, 29 Cyc., p. 270, n. 43.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Dumm & Cook* and *Oliver W. Nolen* for relator.

(1)   There is no substance in the contention of respondent that he cannot be required to pay the warrants issued by the board of supervisors to the relators, for the reason that relators were doing business under a fictitious name and had not registered with the Secretary of State.   Assuming that the statute would be applicable to a case of this kind.   There is nothing in the act to prevent relators from recovering money which is rightfully due them and for which warrants have been issued to them.   Laws 1919, p. 621.   (2)   The board of supervisors of said drainage district, having authority under the law to issue the warrants in question, and the warrants having been duly issued and delivered to relators, there remains for respondent, as treasurer of the drainage district, nothing but to pay to relators the amounts named in the three warrants involved, with six per cent interest thereon from the date of their issuance. Secs. 4385, 4401, R. S. 1919; State ex rel. v. Holt Co.

Court, 135 Mo. 543.; State ex rel. v. Treas. Callaway Co., 43 Mo. 228; Sheridan v. Fleming, 93 Mo. 325; State ex rel. v. Adams, 161 Mo. 349; McGowan v. Ford, 107 Cal. 177; 19 Am. & Eng. Ency. Law (2 Ed.) p. 795.

*Dubois & Miller, A. F. Harvey* and *Henry Davis* for respondent.

(1) This court is not warranted in overriding its Rule 32 and assuming jurisdiction in this case wherein concurrent effectual jurisdiction may be exercised by the Circuit Court of Nodaway County, the place where respondent is incorporated and where the evidence in the case is located. State ex. rel. v. Bates, 235 Mo. 282; State ex rel. v. Latshaw, 291 Mo. 592; State ex rel. v. Tune, 273 Mo. 255. (2) Respondent's return herein alleges and states facts showing that if jurisdiction be assumed in this case the issues involved raise serious and involved questions of fact, which are to be determined by evidence existing in Nodaway County, and which, if this court assume jurisdiction herein, would have to be determined under the expensive and cumbersome procedure of the appointment of a commissioner and the taking and printing of testimony, necessarily involving an expense almost, if not entirely, equal to the entire amount involved; that speedy, convenient and effective justice, with a minimum expense and inconvenience to the parties, can be obtained by a procedure to try the facts in the normal, usual and ordinary way in the Circuit Court of Nodaway County, and that the petition shows no matter of any public importance whatsoever but a simple action for debt; and that relators do not have a clear, unequivocal specific right to have performed the thing demanded. State ex rel. Dolman v. Dickey, 280 Mo. 536; State ex rel. v. Stone, 269 Mo. 342.; State ex inf. v. Gas Co., 254 Mo. 532; Am. Fire Alarm Co. v. Board of Police, 285 Mo. 593; Spelling's Extraordinary Relief, sec. 1500. (3) Respondent's return herein alleges and states facts showing that if this court can find any grounds for

the exercise of this extraordinary judicial writ, it must still find from the face of the petition that the amount involved is far below the pecuniary jurisdiction of this court and could never reach this court, already over-burdened with work, except in this manner, and would be solely cognizable in the trial court and the Kansas City Court of Appeals, to one of which courts it should now be relegated. (4) Relator, the Capital Reclamation Company, is a fictitious person not having registered with the Secretary of State as such and in doing the business and in receiving the warrants in question committed a crime under the laws of the State and cannot maintain this action enforcing an obligation obtained as a part of a criminal act. Laws 1919, p. 621. (5) The board of supervisors of the drainage district had rescinded the warrants theretofore issued by them, and they had given him notice of the rescission, which constitutes a complete defense to the issuance of a writ of mandamus to compel respondent as treasurer of the district to pay the amount of money mentioned in the warrants to the relator. State ex rel. v. Williams, 232 Mo. 71; People v. Klokke, 92 Ill. 137; Harrison Co. v. Ogden, 165 Iowa, 325; State v. Cook, 43 Neb. 318; Dey v. Lee, 49 N. C. 238; People ex rel. Hotchkiss v. Broom Co., 65 N. Y. 222; Adams v. Wheatfield, 61 N. Y. Supp. 738; People v. Bartlett, 5 Pac. 674; Frankel v. Bailey, 31 Ore. 285; Murphy v. Treasurer, 56 Mich. 505; Van Aken v. Dunn, 117 Mich. 421; State ex rel. v. Benson, 70 Ind. 481. (6) The act of the board of supervisors of the drainage district in auditing the claims of relators and issuing warrants for their payment was not in any sense a judgment. It was not a judicial determination of the validity of the claim so as to prevent want of consideration being set up as a defense in an action on the warrants. The allegation in the return of respondent that there was a failure of consideration for the warrants, but that the board of supervisors did not know that there was such a failure at the time of issuing them is a plea of issuance by mistake which is a defense to this action. State ex

rel. v. Williams, 232 Mo. 71; State ex rel. v. Treas. Callaway Co., 43 Mo. 230; State ex rel. v. Adams, 161 Mo. 367; Reppy v. Jefferson Co., 47 Mo. 68; St. Louis Gas Light Co. v. St. Louis, 11 Mo. App. 75; State ex rel. v. Bollinger Co. Ct., 48 Mo. 478; O'Hara v. Fagan, 56 N. J. L. 282; K. C. Natl. Bank v. Hovey, 48 Kan. 25; Simmons v. Davis, 18 R. I. 46; Bailey v. Lawrence County, 2 S. D. 533; People ex rel. v. Assessors, 137 N. Y. 201; Van Aken v. Dunn, 117 Mich. 423. (7) A drainage district warrant is but the means of payment of a claim. It is of no more effect than the check or note of a private person and is subject when sued on to all the defenses that checks or notes are, and the bank upon which a check has been drawn may plead that payment was ordered stopped by the drawer. Mistakes of a county court acting as the financial agent of a county may be inquired into and corrected as well as those of an individual. Chap. 28, Art. I, R. S. 1919; Marion Co. v. Phillips, 45 Mo. 75; Bank v. Franklin Co., 65 Mo. 112; Bank v. Lexington, 74 Mo. 105; Albers v. Commercial Bank, 85 Mo. 176; Steffen v. Long, 165 Mo. App. 258.

GRAVES, C. J.—Original action in Mandamus. Relators were engaged in all kinds of drainage work. The case here stands upon the petition for our writ (to be taken as and for the alternative writ), and demurrer to the return, which in effect is a motion for judgment on the pleadings. As indicated by the style of the case, relators were doing business under the firm name of Capital Reclamation Company. They received from the Andrew-Nodaway Drainage District of Nodaway County, for engineering work, surveying and expenses, three several warrants, aggregating $1446.97. These warrants were dated respectively on March 9, 1920, March 9, 1920, and February 10, 1921, were, in the order above, for $500, $500 and $446.97, aggregating the total above named. These warrants were: ''By order of the Board of Supervisors of Andrew-Nodaway Drainage District, Nodaway County, Missouri,'' and were duly signed by the

president of the board of supervisors, and attested by its secretary. They were drawn on the "Treasurer of Andrew-Nodaway Drainage District." On the date of their issue, each warrant was presented for payment, but were protested in a memorandum in this language: "Presented for payment this 9th day of March, 1920, but protested for want of funds. JACOB NELSON, Secy-Treas. of Board."

The foregoing is from one of the warrants, and it suffices to say the other two were of the same tenor. It is alleged and not denied that later there were funds in the treasury of said district out of which such warrants could have paid, but the payment thereof was refused. There were funds in the treasury with which to pay the warrants at the institution of this suit.

Our alternative writ was ordered, but by agreement the petition for the writ was taken as and for the writ. The return is of some length, and we will note the questions raised, so far as required, in the course of the opinion. The purpose of the suit is to compel the payment of these warrants.

I. The first contention is that we should not further assume jurisdiction of this case, because it is a case which could have been tried by the circuit court, or some lower court, and that under our Rule 32, this court should not have ordered the alternative writ. Under the Constitution this court has original jurisdiction in mandamus cases. This issuance of such writ is always discretionary, but when once issued, we have most generally followed the case to the end.

Original Mandamus in This Court.

In the case of State ex rel. Orr v. Latshaw, 291 Mo. l. c. 600, this court in banc has well said:

"With respect to our Rule 32, the time for respondent to have invoked that as a reason for the denial of the writ was upon the filing of relator's application for the writ, notice of which was given respondent and received by him, or upon the entry of his appearance here-

in. This court having waived the rule, and having assumed jurisdiction and issued the preliminary writ, we shall continue with the cause."

But the writ was originally well merited in this case, because of a public interest involved in statutes not as yet construed by this court. Section 4579, Revised Statutes 1919, provides:

"The law of this State, under which county warrants are issued, sold, transferred, assigned, presented for payment, and paid, shall apply to all warrants issued by any drainage or levee districts in Missouri organized under any existing, special or future law of this State."

In addition, Section 4580, Revised Statutes 1919, says: "The performance of all duties prescribed in any existing or future laws of this State governing the organization and administration of drainage or levee districts may be enforced by *mandamus* at the instance of any person or corporation interested in any way in any such district."

When we say that the statutes have not been construed, we mean as applied to a proceeding in mandamus to compel the payment of a warrant issued by a drainage district.

There are, therefore, two good reasons, for denying this contention of the respondent, and for passing upon the law of the case in respect to the merits of the case. This contention is ruled against the respondent.

II. The two sections of statutes (Secs. 4579 and 4580, R. S. 1919) came into the body of our statutory laws by the Act of 1913. [Laws of 1913, p. 321.] The evident purpose of these two sections is to place the drainage district warrant upon the same plane as the county warrants, and to make the law of the State then applicable to county warrants likewise applicable to drainage district warrants. The status of such warrants having been made by these statutes the same as county warrants, the rights of the parties in this case must be determined as if the warrants were county warrants. Per the force of these statutes we must apply the governing law as to county war-

Applicable Statutes.

rants. By the latter section mandamus is specifically given as a remedy to enforce rights either growing out of the organization or administration of the drainage district.

There is an exceedingly long return in this case (some portions of which call for further notice), but there is no charge that fraud was used in the procurement of the warrants. Some warrants issued to relators were paid in the usual course, and the warrants herein involved were simply protested for want of funds, a very usual thing for county warrants. An important question is to determine the status of a county warrant, where there has been no actual fraud practiced in the very procurement of the warrant. Of this question next.

III. Under the statutes quoted, supra, the treasurer of the drainage district (who is respondent herein) occupies a position similar in all respects to a county treasurer, in respect to warrants drawn upon funds in his hands. The status of a county treasury has been firmly fixed by rulings of this court. In a mandamus proceeding, originating in our court in banc, entitled State ex rel. v. Adams, 161 Mo. l. c. 364, we said:

*Mandamus as Remedy.*

"It is a well-settled doctrine of this State that county treasurers are simply ministerial officers and can be compelled to perform their duties. As was said by Judge BLISS in State ex rel. Thomas v. Treasurer of Callaway County, 43 Mo. l. c. 230, 'There is no doubt of the jurisdiction of this court by mandamus against county treasurers who refuse to pay claims properly audited.' To the same effect are the cases of State ex rel. Jordon v. Haynes, 72 Mo. 378; People v. Lawrence, 6 Hill, 244; Baker v. Johnson, 41 Maine, 15.

"It is not perceived wherein the case of Andrew County ex rel. v. Schell, 135 Mo. 31, cited by respondent, applies to the altered facts of this case. The rule announced in that case is without application here. If, therefore, the issuing of the warrant described in the alternative writ was within the scope and authority of

the county court, the respondent being simply a minis-
terial officer of the county, confessedly having money
enough in his hands belonging to the swamp land fund
with which to pay said warrant and all unpaid warrants
of prior presentation drawn against such fund, then it
was his plain duty to have paid the same.''

In the foregoing case the county court had directed
the issuance of a warrant for $3900 to the relator there-
in, and such warrant was issued, directing the county
treasurer to pay the relator in that action such warrant.
A refusal to pay occasioned the mandamus proceeding
here, which proceeding resulted in our peremptory writ
being granted. In that case, like the one at bar, there
was a long return pleading (or, better stated, attempt-
ing to plead) a contract between the relator there and
the county. The result of our ruling was, that the county
court had the legal power to issue the warrant, and that
it was therefore the duty of the treasurer to pay, and if
he did not pay, he would be compelled to pay by manda-
mus. Of course we might have (a question we do not
decide here) a different case, if the county court had
no legal authority to issue the warrant. In the instant
case, the warrants were ordered by the drainage district
board, which under the statutes we have quoted occupies
the same relation to the drainage district as the county
court does to the county.

In State ex rel. Thomas v. Treasurer of Callaway
County, 43 Mo. 222, cited supra in State ex rel. v. Adams,
the county court after auditing a claim, and ordering the
warrant (later involved in the mandamus case here) or-
dered the treasurer not to pay the full amount of the war-
rant, and made a new order for a lesser amount. This
court, however, ruled that the claim filed was a legal
demand, and one which the county court had the power
to allow, and having once been allowed by it, and the
warrant issued upon the county treasurer, for its pay-
ment, mandamus would lie to compel the treasurer to
pay such warrant. We made our writ peremptory in
that case, involving $413.70.

SHERWOOD, J., in State ex rel. Jordon v. Haynes, 72 Mo. l. c. 378, thus tersely states the rule:

"If the board of directors of Walker township had the legal authority to issue the warrant, then the trustee of the township, being but the ministerial officer thereof, would be bound, having funds in his hands raised for that express purpose, to pay the warrant thus drawn. [State v. Callaway Co., 43 Mo. 228.] Section 8, article 9, page 106, Laws 1873, expressly authorizes such board to draw an order (or warrant) on the trustee for the amount allowed by them."

Even in State ex rel. v. Williams, 232 Mo. 56, relied upon by respondent, this court does not hold that a warrant should not be paid by the treasurer, where the court issuing the warrant had legal right to issue it. In that case the law under which the warrant was issued was unconstitutional. The whole trend of this case accords with previous cases in this State, where the county court had a legal right to issue the warrant.

There are many cases from other jurisdictions, but one will suffice to show their trend, and the trend of modern cases. Thus in Ray v. Wilson, 29 Fla. l. c. 349, it is said:

"The above authorities hold that where the claim of the relator is one of a character whose payment the law imposes on the county or municipality, and it has been audited, and ordered to be paid by officers having the authority to audit it and order its payment, a county treasurer, or other paying officer, should not refuse to pay, if he has the money to pay it with, unless the claim is for some reason fraudulent. The duty to pay, where the paying officer has the funds to pay with, and the officers auditing and ordering payment to have acted within the scope of their powers, and there is no fraud attached to the claim, is merely ministerial, and mandamus will lie to compel its payment. It is true the right to this remedy was doubted, though not decided, in People v. Lawrence, 6 Hill, 344, but such right is affirmed in the later New York cases. If the claim is not one of a char-

acter payable by the county or municipality, or if the board auditing it and ordering its payment had no authority to do so, or if there is fraud (or, it may be, mistake, Strook v. Pulaski Co., 4 Dallas, 208), neither of which conditions is pretended to exist here, the paying officer should refuse to pay it. It is true that in some cases the right to the writ is put on the ground that an ordinary action at law will not lie against the county or municipality on the claim. We fail to see that such an action against the county is a sufficient remedy. If the claim is lawful and has been audited and ordered paid by the proper authority, and the officer whose function it is to pay has been furnished with and has the public money for its payment, there is a palpable insufficiency in a remedy which would give him a personal judgment against the county or municipality, to be followed it may be by a mandamus to compel the levy of a tax to pay the same in case the money in the treasury should have been used, or there was not enough to pay the accrued interest, and all this, too, simply because an officer whose duty it is to pay lawful claims sees fit to refuse to do his duty. The holder of such a claim has an immediate right to the money provided and held for his payment, and a remedy which imposes any of the delay indicated and its attendant expense, is entirely inadequate. A remedy which will avoid mandamus must be both specific and adequate. [Baker v. Johnson, supra; Topping on Mandamus, 18, 19; High on Extraordinary Legal Remedies, secs. 9, 15, 16, 17.]

"The contention that the relator has another sufficient legal remedy is answered by the authorities and observations set out above."

This was one of the first courts to break away from old common-law rulings on the question of mandamus, in cases of the character involved in the instant case. The case is annotated in 14 L. R. A. 774, 775, and the learned annotator has this comment to make upon the opinion: "But the decision in the principal case appears to be the first to announce the sensible rule that a suit against

the county, with the consequent delay and expense, is insufficient in case of a claimant who has an immediate right to money actually in the treasury of which he is deprived simply because of the officer's refusal to do his duty.''

So, when it is remembered, that Missouri was as early as Florida, in such a ruling, and further remembered that by statute in 1913 we have made the law applicable to counties, county courts and county warrants, applicable to drainage districts, and their auditing bodies, and their warrants, and their treasurer, we must rule, (1) that mandamus is a proper remedy, and (2) that a warrant issued for a legal purpose by such auditing body must be paid by the treasurer. It only remains to be seen whether or not the board of supervisors of this drainage district exceeded their law authority in issuing the warrants involved herein.

IV. The test, as to whether mandamus will lie to compel the payment of a warrant ordered and issued by an auditing body, is, as we have seen, dependent upon the fact as to whether or not such body was empowered to ⟨⟩ audit the claim, and direct the issuance of the warrant. If the auditing of the claim was beyond its lawful powers, then of course, such would be a good defense to the validity of the warrant ordered. Such has been the course of our courts in county warrant cases, and the rule generally elsewhere. It is immaterial whether you call the act of the auditing body a judgment, or a settlement, for the legal effect is the same. In either case, absent fraud, or possibly mistake, in the very procurement of the warrant, the issuance of the warrant acknowledges and fixes liability. This is the rule our court applies to the auditing of a claim by the county courts, and the issuance of the warrants in pursuance of the audit, and by virtue of the Act of 1913, supra, the same rule applies to drainage districts.

Facing this legal situation, the respondent claims that the warrants were issued upon claims growing out of a

contract between relators and the drainage district, and further that such contract is void. If the contract is void, then there would be substance to respondent's contention, or to be more accurate, there might be substance to the contention. It is charged that the Capital Reclamation Company is a fictitious person, and not having registered with the Secretary of State as such, according to the Act of 1919 (Laws 1919, p. 621) their contract is illegal and void. This calls for a review of the statutes, and the contract. The contract in full is made a part of the return by being fully pleaded therein. Its terms and conditions are, therefore, admitted facts. The first section of the Act of 1919 (Laws 1919, p. 621) reads:

*Unregistered Fictitious Name.*

"That every name under which any person shall do or transact any business in this State, other than the true name of such person, is hereby declared to be a fictitious name, and it shall be unlawful for any person to engage in or transact any business in this State under a fictitious name without first registering same with the Secretary of State as hereinafter required."

By Section 5 of the act the failure to register is made a misdemeanor. No other punishment or restrictions are contained in the act. We need not in fact discuss the legal effect of a failure to register under this Act of 1919. The contract in this case shows that it was made with a co-partnership composed of John H. Nolen and Chester D. Mann, doing business under the name of "The Capital Reclamation Company;" that these parties so operating should be thereinafter "termed the engineer;" the contract then provides for what these parties, as "the engineer" shall do, and what they shall receive for their services; and the 10th paragraph of the contract says:

"That the Engineer will have Chester D. Mann, a graduate of the engineering department of the Missouri State University, and an experienced practicing civil engineer, in charge of the surveying, map-making and other work of preparing the Plan for Reclamation (unless for

good cause he be prevented from performing such work) and that Linn Brown, a graduate of the engineering department of the University of the State of Washington and an experienced practicing civil engineer, shall act as assistant in said work, and that the Capital Reclamation Company, together with said Chester D. Mann and Linn Brown, shall constitute the board of engineers of the District.''

The contract upon its face shows that it is one between John H. Nolen and Chester D. Mann, with the further provision that Linn Brown, a graduate and experienced engineer, should act in lieu of Mann, if he should be absent. With all these things detailed in the contract, it was signed and approved by the drainage district. The district knew the parties with whom they were contracting, and knew further that Mr. Nolen made no pretense of being a graduate engineer. The statute might have some application, if the real parties had not been disclosed by the contract, and as so disclosed, accepted by the district. Under this contract, the district knew just with whom they were dealing, and the contract specifically provides for the exact part, which Mr. Nolen was to take in the performance thereof. If the contract had not disclosed all the facts, there might be substance in the contention, but on this we do not rule. The district received and accepted the services with a full knowledge of all the facts, and the contract itself is really one between Nolen and Mann, as copartners. We say accepted the services, because the board of supervisors, as per the contract, paid, by some six warrants, for one-half of the compensation due under one phase of the contract. Three of these warrants were paid, and payment on the other three (those involved herein) were not paid because of the lack of funds when they were presented. The return, however, says that at the time of the institution of this suit the district had on hand $50,000, which was more than enough to meet these warrants and all their other obligations. In our judgment the Act of 1919, supra, does not invalidate the contract before us. The district

had all the facts before it, and should now, under admitted facts, be, at least, estopped. This contention is therefore ruled against respondent.

V. The burden of the remainder of the return is to the effect that the work done for the district was not efficiently done. The contract provided that "one-half" of certain fees to relators should be paid **Inefficient** "upon acceptance and adoption by the board **Work:** of the report of the engineer as the plan of **Recalling** **Warrant.** reclamation." From the return the six warrants issued (including the three involved here) were issued in pursuance of this clause of the contract, and after the plan of reclamation had been adopted by the board. The claim was one which the board had the legal right to audit and pay, and it will be presumed that they had evidence before them upon which to determine whether or not the contract had been faithfully performed. So run the cases. Having the full power to pass upon and determine the obligation of the district with reference to the claims presented (under the terms of a legal contract) and having ordered the warrants issued in settlement of such claims, the liability of the district became fixed, as by the terms of the warrants, and no subsequent action of the board can change the status. In this situation it was the duty of the respondent (with ample funds in hand) to pay such warrants, with six per cent interest thereon from the day they were protested. Such is the rule as to county warrants, annd such by the Act of 1913 is made the rule for drainage district warrants. We shall not prolong this opinion further.

Relators have shown a clear legal right to a fixed sum, and our alternative writ should be made permanent. It is so ordered. All concur, except *Woodson, J.,* absent.