Price vs. Johnson County.

## PRICE vs. JOHNSON COUNTY.

1. A county court has power to set aside the settlement of a collector for fraud at any time during the term.

2. General expressions made use of in delivering an opinion, must always be construed in reference to the facts and circumstances of the case, in which they are uttered.

3. The county court, having jurisdiction to enter a judgment sought to be enjoined, there is no authority to enter into an examination of its merits. An injunction is a release of errors at law, and the proceedings on it are not appellate in their nature.

## APPEALL from Henry Circuit Court.

ADAMS & HICKS, for appellant.

1. All the proceedings had in the county court after the settlement by complainant on the 17th day of August, 1848, commencing with the revocation of said settlement and ending with the judgment and execution, were void.

1st. Because there was no legal notice served upon the complainant: see Caldwell vs. Lockridge, 9 Mo. R. 362; Smith vs. Rice, 11 Mass. Rep. 507; Meddin vs. Platte County, 8 Mo. Rep. 238; Milan, adm'r vs. Pemberton, 12 Mo. Rep. 598; 3 Sumners R 341.

2nd. Because the county court derive their whole jurisdiction in the premises from the statute, and cannot and do not proceed according to the course of the common law, but must persue the requisition of the statute, and a departure therefrom will render the proceedings void. The statute did not authorize the court to make an adjustment of complainant's ac-

Price vs. Johnson County.

counts for revenues arising from taxes, as in the present case, in his absence—notwithstanding they may have cited him to appear.

If he failed to appear they might have compelled him by attachment which was the only remedy. The statute entitled "an act to establish and regulate county treasuries," under which the county court seems to have acted, has no reference to a case of this kind; but it is governed by the provisions of the act entitled "act to provide for the levying, assessing and collecting the revenue," approved March 27th, 1845: see sections 34, 35, 40 of article 2 of the latter act, and sections 20, 23, 39, 40, 41, 42, 43, 44, 45, 46 of article 3 and section 4 of article 4 of the latter act in connection with article 2 of the former act.

3rd. Because complainant's settlement of the 17th August, 1848, is final and conclusive: Downing's Est. 5 Watts 90.

II. The law does not authorize the county court under any circumstances to render judgment against a collector for revenue arising from taxes and licenses as in this case. But even if it did, there could be no judgment given without first notifying the defendant. A proceeding is void for want of notice even where none is directed by the statute, and consequently the judgment rendered against complainant, at the November term, 1848, of the Johnson county court was void, not only because there was no authority in the statute for rendering such a judgment, but because it was rendered without any summons or notice to the complainant: see 3 Sumner Rep. 341; 14 Mass. Rep. 223.

III. The decree is erroneous upon its face.

1st. Because it dissolves the injunction and leaves the judgment of the county court in full force, and at the same time, decrees against the complainant the sum of $1,393 94 with 30 per centum per annum from the 28th day of August, 1848: Powers & Ashley vs. Watts 8 Mo. Rep. 299,

2nd. Because there was no cross bill to support any decree for relief in favor of the defendant.

3rd. Because even if there had been a cross bill, the decree orders the payment of a penalty of 30 per centum per annum from the 28th day of August, 1848, and courts of equity will not aid in the enforcement of penalties or forfeitures: see Story's Equity Pleadings, sects. 391, 391 a, & 392; Cooper Eq. Pl. 85, 86; Germain vs. Mackie, 6 Paige 288, 2d Story's Eq. sections 1319 and 1494; Mitford's Eq. Pl. by Jeremy 186, 193, 194, 198; 1 Madd. Ch. 173–4; Cooper's Eq. chap. 3 sec. 3, page 191 206; Montague vs. Dudman, 2 Vesey 398; 14 Vesey 64; 3 Mere. 693; Livingston vs. Tompkins, 4 I. ch. 431; Watts vs. Watts, 11 Mo. Rep. 547.

IV. The decree is not supported by the evidence, and ought to have been given for the complainant; there was no testimony to support the decree, except the testimony of the witness, Reynols, and he was clearly interested, and incompetent: see Horine vs. Horine & Funk, 11 Mo. R. 649; Collins vs. Ellis, 21 Wend. 397; 8 Mo. R. 846; 1 Starkie's Ev., side pages, 109, 110, 111, 112 and top pages 90, 91 and 92; see the distinction between an interest in the result and in the record as an instrument of evidence, 1 Starkie Ev. side page 102, top page 83. The witness, Reynols, was not an agent of the county of Johnson, acting in the name of the county, but was a public officer, acting in his own name as such, and subject to the provisions of the statute creating the office and prescribing its duties. But even if the hypothesis were true that he was an agent in the strict sense of that term he was still an incompetent witness. The principle is well established that an agent cannot be called to deny the effect of his own act: see 1 Greenleaf's Ev. sec. 417; (Fuller vs. Wheelock, 1 Pickerings' Rep. 135 in point.)

V. After answer it is too late to object to the jurisdiction of the court, on the ground that the parties' remedy was at law: see 10 Mo. R. 656; 4 I. ch. R. 290.

Price vs. Johnson County.

LEONARD & HAYDEN, for respondent.

There are only two questions in the record:

First. Is the judgment of the Johnson county court void?

Second. If it be so, can a court of equity interfere by injunction to prevent it from being carried into effect, or is the party left to his legal remedies against whoever attempts to enforce it?

If the county court judgment be not void, then the allegations in the bill that the collector paid into the treasury the whole sum due from him, and that the exparte settlement of the 27th August, upon which the judgment was given is erroneous in fact, furnishes no ground of equity. It is not competent for the circuit court to re-try in this manner a matter submitted by law to another tribunal. No such jurisdiction has been conferred upon the circuit court.

Of course under this view of the case, this court is relieved from the necessity of investigating the facts in reference to the correctness of the balance struck against the collector in the exparte settlement, and from deciding the question of the competency of the treasurer as a witness for the county—First. The Johnson county court judgment is not a nullity.

The alleged grounds of nullity are, that the act concerning county treasuries, Rev. Satt. p. 308, sects. 2, 3, 4 and 5, does not authorize this proceeding against a collector for his failure to settle and pay over money collected on account of general taxes, the want of notice to the collector that this judgment would be entered against him if he failed to appear and show cause against it, and that previously, at the same term of the court, upon a settlement with the collector of the same account, a smaller balance was struck against him and paid accordingly, and that this was a subsisting settlement of the same account at the time of the settlement of the 28th August, and had the effect of rendering that settlement void.

Of these objections in their order.

1st obj. The case is regulated by the act concerning county treasuries, both the person and subject matter of the settlement fall within the words and policy of that, and there is nothing in the general revenue act to exempt either the collector or the fund here settled, from its provisions, both acts stand together and there is nothing in the one to limit the general words of the other.

2nd obj. The balance struck against the collector upon the settlement of the 27th August, and the penalty of thirty per cent. per annum became, by lapse of time and the ommission of the party to appear in court and show cause against it, a judgment against him. The court had no discretion over the matter, its only duty was the mere ministerial one of entering up a formal judgment.

Neither the act itself nor natural justice required any notice to be served on the defendant to show cause why judgment should not be entered up against him for the balance struck and penalty. He had legal notice of the settlement of the 27th of August, and knew that unless he appeared and showed cause against the balance that should be then struck, a judgment therefor would be entered up against him at the succeeding term. No one supposes that where there is a default against a party, he is entitled to a fresh notice before there can be a final judgment.

3rd obj. The settlement of the 17th of August was annulled by the very act of re-settling the account of the 27th of August, which was on due notice; the last act per se annulled the preceding act, it was a re-settlement of a previously settled account and by striking a new, annulled the old balance.

The court had power during the term to vacate this settlement—it could set aside any determination of law or fact, to which it had come, and direct a re-trial. This power to correct its own errors during the term, is a necessary power in every court, and daily exercised by all: Caldwell vs. Lockridge, 9 Mo. R. 362.

But the objection here insisted upon is, that if the settlement of the 27th of August is to have the effect of annulling the previous settlement of 17th of that month, that is an effec

Price vs. Johnson County.

outside of the notice served upon him, and therefore to that extent the latter settlement is without notice and so void. It is obvious that this objection is merely formal. The plantiff had made a settlement of his accounts as a collecting officer, and the summons could be construed in no other manner, than as a summons to re-settle, as a notice the former settlement was to be re-viewed. A different construction, for the purpose of annulling the settlement of the 27th of August, it is respectfully submitted trifling with the merits of the matter.

Again, admitting that the first settlement must have been vacated before the court would proceed to a re-settlement, and that the re-settlement of the 27th of August cannot on account of the insufficiency of the notice be construed as vacating the settlement of the 17th of August, yet, here there was an express annulling of the settlement by the order of the 23rd of August.

This order, however, is said to be void upon the ground that the principles of natural justice forbid that a judicial sentence should effect one without notice, and this principle natural—not positive, law is invoked for the protection of a party who admits, he had information—notice in fact, but contests its legality; that he knew of the intention to re-settle his account, but purposely kept away, that he might set up this matter as a ground of nullity in the re-settlement. If this had been a proceeding between party and party, and one party had given his adversary notice, either written or verbal, that he would move a reconsideration of the settlement, would a reconsideration upon such notice be void? If there had been a rule of practice in the court allowing a reconsideration during the same term upon a written motion to that effect, filed in court, would an order made upon such a motion without any other notice be voi ? There is a manifest distinction between the rights of person and property, secured by the laws of the land of which we cannot be divested except by a judicial sentence founded upon sufficient notice to appear and contest our rights, and a right secured by the judgment of a court, and which during the term, is in the breast of judges and subject to their control: Van Wormer vs. The Mayor, &c., of Albany, 15 Wend. R. 236.

Second question. If the county court judgment be a nullity, a court of equity cannot interfere by injunction to prevent it from being carried into effect; the party must be left to his legal remedies against whoever attempts to enforce it.

The doctrine that a party who lies by, and upon the hearing for the *first time* raises the objection that the remedy is at law, and not in equity, does not of course apply to this case, where this was the first defence insisted upon by demurrer, and the answer put in only after the objection had been overruled.

The bill assumes that the mere nullity of the county court judgment, without any thing more, would not entitle the plaintiff to the active interference of equity, and so it sets up the additional matter, that the plaintiff had paid the county all he owed her, and that the last balance struck against him was erroneous in fact.

In this view, and only in this view of the case, even according to the plaintiff's own statement of the law, is it material for this court to investigate the fact? If the judgment be not a nullity, there can be no relief in equity; the matter is then "res judicata," and no court of law or equity, as a court of mere original jurisdiction, can overhaul it. It may be erroneous both in fact and in law, (an infirmity to which all human judgments are subject) but that furnishes no ground to review it in this collateral manner.

Here, however, the evidence shows that the balance struck in the settlement of the 27th of August was the true balance, due from the collector, and that the balance found upon the preceding settlement of the same term, was fraudulently procured by setting up treasurer's single receipts to the amount now claimed against him, that had been previously extinguished by the duplicate receipts of June, 1847, being included in and making a part of the sum of $1916 95 covered by that receipt.

If the facts are investigated, it is respectfully submitted that the evidence most satisfactorily establishes this conclusion, and shows that the two inferior tribunals that have passed successively upon the facts of the case, are well warranted in the conclusion to which they respectively came.

Price vs. Johnson County.

The treasurer was a competent witness for the county without any release. O'Bryan vs. Louisiana State Bank, 5 Martin's Louisiana Rep. 305; 2 Starkie's ,Evidence, 753 and notes.

If he had any interest in the record as an instrument of evidence, that interest was extinguished by the statute the moment he was sworn as a witness in the cause.

Our position is, that admitting all the facts stated in the bill to be true, the plaintiff has stated himself out of a court of equity by showing his remedy to be at law.

If the judgment be not void, it is admitted he has no remedy, either at law or in equity, in a court of mere original jurisdiction. If it be void, a mere nullity. then all the cases show that he has an adequate remedy at law against all who attempt to enforce it, and by treating as a nullity any title acquired to his property by an execution sale.

And so in either event, whether the judgment be valid or a mere nullity, equity cannot furnish the plaintiff any relief, and this court is not now called upon to pronounce upon the validity or nullity of the county court judgment.

Scott, J., delivered the opinion of the court.

This was a bill in chancery, filed by Price against Johnson county, in which it is alleged : That Price was elected sheriff of said county for the years 1846 and '47, and thereby became ex-officio collector of the revenue; that at the August term of the county court for said county, on the 17th day of the month, he settled with said court for the revenue for the year 1847, on which settlement he became indebted to the county $800 and upwards; that this settlement was approved and entered of record; that as he collected the revenue, he from time to time paid it into the county treasury and took J. S. Raynol's receipt therefor, who was then the treasurer; that he had never before made a settlement, and that then made was voluntary on his part. The day after the settlement, the balance found due was paid into the treasury, and on the presentation of the treasurer's receipt for said sum, he obtained a quietus from the clerk of the county court under his seal of office; that on the same day he paid $80 and upwards, due for license, &c., and obtained the clerk's receipt for the same; that on the 17th August, 1848, he obtained from the county court, under seal, a certificate that the revenue for the year 1846 had been paid; that on the 23rd day of August, during the same term, the county court set aside the said settlement, and issued a summons to him (Price) to appear on the 28th day of the month, to have the previous settlement corrected; that he was served with the notice required on the same day the order was made requiring him to be summoned, but he did not appear, and on the day appointed, on a re-examination of his accounts, he was charged with the sum of $1393 94; and at the next term of the said court, on the 28th November, a judgment for said sum was rendered against him, with thirty per cent. interest thereon per annum. On this state of

facts, an injunction, on the ground that the proceedings of the county court were void, it having no authority to set aside the first settlement, was prayed and granted.

From the various answers and the evidence in the cause, it appears that Price, the complainant, was sheriff of Johnson county for the years 1844, 5, 6, 7; that as he would collect the revenue from time to time, he would take single receipts from the treasurer for the several sums so paid, and when a final settlement was to be made for the whole year, these single receipts would be given up, and duplicate receipts for the amount of them taken, by which a quietus was obtained from the clerk of the county court; that in June, 1847, Price, under pretence that he wanted to settle for the revenue due for 1845, obtained from the treasurer duplicate receipts for the sum of $1916 95, being the amount due for that year under a promise that the single receipts, whose sums were included in the above sum of $1916 95, should be delivered up to the treasurer.   These single receipts never were delivered, and so far from it, Price introduced them into the settlement of August, 1848, and again got credit for them in that settlement.   These facts appearing to the court, Price was informed that the settlement would be set aside unless he appeared and explained the matter.   This Price declined to do, and on the 23rd of August the court vacated the order of settlement made on the 17th, and directed Price to be summoned to appear and make a settlement of his accounts on the 28th day of the month.   Price was duly served with the order, but refused to appear, and on the day appointed the court proceeded to a settlement of his accounts, and found him indebted to the county in the sum of $1393 94, and at the November term of said court entered judgment against him for that amount with thirty per cent. per annum interest.   Between the settlement in August and the rendition of the judgment in November, the judges who acted in August had been replaced by others.   Price told one of the judges who made settlement with him, and who waited on him to urge him to appear and show cause why the first settlement should not be set aside, that he had receipts to the amount of $500, or $600, or $700, which the county treasurer might have if they would do him any good.   Price gave as reasons for not appearing, the advice of counsel and a belief that the judges were prepossessed in favor of the treasurer.

From the view we have taken of this matter, the foregoing general statement is sufficient for a proper understanding of the cause and the points on which it turns.   The court below entered a decree similar to

that entered in the county court, dissolved the injunction and dismissed the bill; from which decree the complainant appealed.

The first point raised by the complainant is, that the county court misconceived its authority in proceeding against him under the statute regulating county treasuries, instead of that concerning the revenue. The 4th section of the 4th article of the revenue act prescribes that every collector of the revenue, having settled according to law, shall forthwith pay the amount found due into the county treasury, and take the clerk's receipt therefor. The 5th section of the same article imposes a penalty of two and a half per cent. a month for a failure to pay over, but is silent as to any remedy for the coercion of payment. The 45th sec. of the 3rd article of the same act, gives the process of attachment merely to compel a settlement, not to enforce payment. So far then as the county revenue is concerned, this act clearly fails to provide an efficient mode for its collection. Indeed the main scope of the general revenue law is to provide for the assessing the State and county revenue, and for collecting the State revenue. The act regulating county treasuries is that designed to govern the conduct of those entrusted with the collection of the county revenue.

The first section of the 2nd article of this act prescribes, that all collectors chargeable with any money belonging to the county, shall settle their accounts at each stated term of the county court. But it is objected that this section does not contemplate settlements for the county revenue arising from taxes, for that revenue is payable only once a year, and therefore there could be no quarterly settlement for it. But suppose that the collector fails to make settlements for the county revenue, is there no remedy but the slow and tedious one of a suit upon his bond, or that by attachment, which may be so easily evaded. This shows the policy of the 2nd section of the above recited act, which declares that if any person, chargeable with money belonging to any county, shall fail to make settlement as above directed, the court shall adjust his accounts according to the best information they can obtain.

If there is a summary method for coercing a settlement for one species of revenue, why not for all? Is there any difference in principle between compelling a settlement for one species of revenue and not another? If a collector has revenue for which he failed to make settlement, he is certainly chargeable with money belonging to the county, and if so, he is subject to the provisions of the act regulating County Treasurers. Because he is required to make but one settlement a year for county taxes, we are not to construe the act in such a way as will exempt him from the obligation of making any settlement at all under

its provisions.   But it is said that Price had made his settlement and therefore the power of the county court in relation to that matter was *functus officio* and another settlement could not be required of him. The settlement made by Price on the 17th August had been set aside, and there was no longer a barrier in the way.   The county court clearly had power to set aside the settlement during the term.   If a collector procures the entry of a settlement by forgery, or by falsehood and fraud, and the court should have reason to believe that it was procured by these means, would it not be in its power during the term to set the entry aside and require of the collector another settlement?   Would this be a settlement according to law which is demanded by the statute? The mere setting aside the settlement was no direct injury to Price. By that act his rights were not compromised.   It did not commit the court against restoring the entry should it prove to have been correct. This was the most suitable mode of procedure.   It was the logical method of effecting the design in view (if I may so speak.)   It was the only manner of avoiding the illogical *exceptio ejusdem rei cujus petitur dissolutio*, which it might have been foreseen would be urged in behalf of Price.   It was the re-examination of his account and finding a greater balance against him than was asertained at the previous settlement, that caused the injury, if any, to Price: Of this settlement he had ample notice.   The case of Caldwell & Lockridge, 9 Mo. Rep., is not opposed to this.   There it was held that the setting aside of a judgment in favor of an administrator, after he had made a full settlement of his estate, and resigned, and the entering of a judgment against him without notice, though during the same term, was void.   In that case, the setting aside of the first judgment and the entering of the second were one and the same act.   It was all done at once *co instanti*.   Here the judgment is merely set aside and the party required to attend at a future day, of which he had due notice, before any other judgment was rendered against him.   It is obvious that this case is distinguishable from that of Caldwell & Lockridge.   General references made use of in delivering an opinion must always be construed in reference to the facts and circumstances of the case in which they are uttered.   In the cause now under consideration, had the county court rendered judgment against Price on the same day on which the settlement was vacated and had nothing further been done, then it might have been contended that the cases were parallel.

This view of the subject relieves the court from the necessity of examining some of the questions which were debated in the argument of this cause.   The county court having jurisdiction to enter the judg-

Price vs. Johnson County.

ment sought to be enjoined, there was no authority to enter into an examination of the merits of the judgment of the county court. The injunction was a release of errors at law, and the proceedings on an injunction are not appellate in their nature. An injunction is only granted for the reason that by the course of proceedings established by law, in the court in which the judgment was rendered, the party could not make his defense, or that since the trial, something has transpired which would make it inequitable to enforce the judgment. We are satisfied with the justice of the judgment of the county court. There is no real hardship on Price in this matter. He was badly advised, considering his character was involved. He had long been honored by the people of the county in which he resided. He knew that there was a blasting imputation on his character involved in the proceedings of the county court, yet yielding to the promptings of self interest he refused to avail himself of the opportunity of defense offered, under the delusive hope, that the technicality of a formal receipt would relieve him from any liability that might be imposed, upon the re-examination of his account. The pretence that the judges were prejudiced against him was fallacious. If the judges who made the settlement in August were prejudiced, they had been replaced by others and he had an opportunity in November following to appear before another bench of judges, and show that the first settlement was correct. This he failed to do. After the law in its mildness has offered a party two opportunities of investigating the merits of a judgment against him, and he has refused to avail himself of them, it is with a bad grace that he appeals to the aid of a court of equity, and the ungraciousness of the act is heightened when it is considered, that in coming into equity he only insists on a supposed technical advantage he had acquired at law.

Whether Raynol was a competent witness is not a matter material to be determined from the view that has been taken of this cause. If he was primarily liable for the money which his evidence would show was due from Price, although he had the same advantage as Price of a settlement in his favor, yet it appears he was willing to forego it and enter into a re-examination of his accounts. There is enough evidence in the record, when the conduct of Price is taken into consideration, to establish the justice of the judgment against him, without relying on that of the county Treasurer.

The other judges concurring, the decree of the circuit court will be reversed, and a decree entered, dissolving the injunction and dismissing the bill.