The State of Mo. ex rel. Thomas et al. v. The Treasurer of Callaway Co.

———————◇———————

THE STATE OF MISSOURI *ex rel.* WILLIAM H. THOMAS *et al.*, Petitioners, *v.* THE TREASURER OF CALLAWAY COUNTY, Respondent.

1. *County Treasurer — Warrant upon — Reversal of order for, by County Court.* Where an allowance by the County Court has been regularly had upon a claim they are required to pass upon, and the warrant has been drawn and presented, and the court adjourned for the term, the county treasurer has but one duty — that of payment; and no subsequent court, not of superior jurisdiction, can excuse him from the performance of that duty.

2. *County Treasurers — Mandamus — Jurisdiction of the Supreme Court.—* There is no doubt of the jurisdiction of the Supreme Court by *mandamus* against county treasurers who refuse to pay claims properly audited. They are ministerial officers, and can be compelled to perform their plain duties.

3. *County Treasurer — Illegal Claims — Mandamus.—* It does not follow, because it is the duty of the treasurer to pay such claims, that the Supreme Court will necessarily, in this form of action, order him to do so. If it should appear that the County Court has, by mistake or otherwise, audited an illegal claim — one which should have been rejected — this court will leave the parties to such remedies as they may have by ordinary proceedings.

4. *Registering Officers — Compensation of.—* Under the provisions of sections 27, 29, of the act of March 31, 1868 (Sess. Acts 1868, p. 138), the allowance of three dollars per diem is paid to the registering officers as compensation. This allowance is not designed to cover all expenses; the other expenses, as well as this compensation, must be paid by the county.

*Petition for Mandamus.*

*A. Budd,* for petitioners.

I. County Courts have full power and authority to audit and settle all demands against the county. (Gen. Stat. 1865, p. 556, § 9.)

II. The County Court had jurisdiction over the subject matter. (Gen. Stat. 1865, p. 556, § 9; Sess. Acts 1868, p. 137, §§ 27, 29.)

III. County treasurers must pay warrants drawn by order of the County Court. (Gen. Stat. 1865, p. 227, § 7.)

IV. The allowance of the claims of the relators was a judicial act. It cannot be impeached collaterally. (Baker v. Johnson, 41 Maine, 15; Huff v. Knapp, 1 Seld. 67; Supervisors of Onondaga v. Briggs, 2 Den. 26; Caldwell v. Lockridge, 9 Mo. 361; Price v. Johnson, 15 Mo. 433; 6 Hill, 245–6.)

V. The said order of allowance could not be vacated or reopened, even during the same term of the County Court at which it was made, without due notice to the relators. (Caldwell v. Lockridge, 9 Mo. 361; Price v. Johnson, 15 Mo. 433.) And without such notice the action of the court vacating the order of allowance would be void (*id*). But the said order of allowance has not been vacated.

VI. The treasurer of the county had no power to vacate the order of allowance or to reverse or modify it. And the notice to the said treasurer is a nullity.

*Mandamus* will lie against a county treasurer to compel him to pay, etc. (Moses on Mand. 99); may issue against officers of quasi corporations by official name (*id.* 200–1)

*John A. Flood*, for respondent.

BLISS, Judge, delivered the opinion of the court.

On the 20th of October, 1868, the account of the members of the board of registration of the county of Callaway, composed of the relators, for expenses and *per diem*, amounting to $413.70, was allowed by the County Court, and a warrant drawn upon the treasurer of the county, which warrant was duly presented, and the proper indorsement made of "no funds." Afterward, when in funds, the warrant was again presented, and payment refused, upon the ground that the County Court had ordered him to pay only part of the warrant. The return to the alternative writ does not deny the auditing of the account, the issuing and protest of

the warrant, the subsequent receipt of funds and refusal to pay the warrant, but sets up as an excuse that, on the 18th of November, 1868, the County Court made an order upon him to pay only $306 of the warrant, and that he is ready to pay that amount. The return also exhibits a copy of the account allowed, and shows that $306 covers the *per diem* of the board, and that the balance is for cash paid for expenses. The relators demur to the return. There is no doubt that County Courts may ordinarily vacate and set aside an order made during the term, upon notice to those to be injuriously affected by it. (Caldwell v. Lockridge, 9 Mo. 358; Price v. Jackson Co., 15 Mo. 433.) But the order recited in the return was not made at the same term in which the account was allowed, neither does it reverse the original order, nor was any notice given to the relators. The original account was allowed, the warrant was issued; and at a subsequent term, without notice, the County Court makes an order on the treasurer to pay only a part of the warrant. We know of no authority for such a proceeding. It is unnecessary to suggest the remedy where a claim clearly illegal has been allowed, either corruptly or by mistake, and the term has passed—whether against the officer, or by appeal, or injunction, or in some other way. But where the allowance by the court has been regularly had upon a claim they are required to pass upon, and the warrant has been drawn and presented, and the court adjourned for the term, the treasurer has but one duty; and no subsequent court, not of superior jurisdiction, can excuse him from the performance of that duty. There is no doubt of the jurisdiction of this court by *mandamus* against county treasurers who refuse to pay claims properly audited. They are ministerial officers, and can be compelled to perform their plain duties.

But in entertaining the application we will look into the claim allowed by the court. It does not follow that, because it is the duty of the treasurer to pay, we will necessarily, in this form of action, order him to do so. If it should appear that the County Court has, by mistake or otherwise, audited an illegal claim—one which should have been rejected—we will leave the parties to such remedies as they may have by ordinary proceedings. (The People *ex rel.* Merritt v. Lawrence, 6 Hill, 244; The People v.

Edmonds, *id.* 472; The People v. Stout, *id.* 350.; Baker v. Johnson, 41 Maine, 15.)

What, then, is. the character of the claim which the treasurer refuses to pay? The account allowed is among the exhibits, and consists, first, of claims for sundry sums due to the relators as members of the board of registration and review, at $3 per day; and that part of the warrant covering those services the defendant is willing to pay. The account also claims for cash paid by relators for necessary expenses, which were also allowed by the County Court. We cannot inquire into the care and discretion used by the court in auditing their expenses. We are bound to suppose it had the proper proof that the amount allowed had been actually expended. We can only consider its power to allow anything for the expenses of this board in the performance of its duties. And in deciding that question we need only look to the statute. Section 29 of the act of March 21, 1868 (Sess. Acts 1868, p. 138), provides that the supervisor and each member of the board of registration shall receive each $3 per day, to be paid by the county. Section 27 of the same act is as follows: "All expenses incurred by the board of registration and board of review, in pursuance of this act, shall be paid out of the county treasury." There can be no doubt that the section intends to cover other expenses than the *per diem* of the members of the board. Without such a provision the act would be nugatory. It is not to be expected that these officers, for such a *per diem*, would pay the various and necessary expenses attendant upon their sessions. The $3 per day is their compensation. The other expenses, as well, must be paid by the county.

A peremptory *mandamus* will issue. The other judges concur.