COUNTY OF JACKSON, Appellant, v. J. H. FAYMAN and MASSACHUSETTS BONDING & INSURANCE COMPANY.—44 S. W. (2d) 849.

Division One, December 21, 1931.

Fred A. Boxley, Rufus Burrus and Elmer B. Hodges for appellant.

426

*William B. Bostian* and *Madden, Freeman & Madden* for respondents.

STURGIS, C.—Jackson County brought this suit against J. H. Fayman, county treasurer of that county, and the surety on his official bond to recover the amount of a certain county warrant alleged to have been wrongfully paid by such treasurer from county road funds after an order not to do so. The county warrant which is alleged to have been wrongfully paid by defendant as county treasurer was issued by plaintiff to W. A. Ross in part payment for construction of a public road in Jackson County under a contract with the county. The petition alleges that the issuance of the warrant in question was procured by false representations as to the amount and character of the work performed by Ross in constructing this public road; that Ross had already been paid all that was due him for the road construction work and therefore the warrant in question was without consideration and was issued in payment for work not performed. It is further alleged that later, but before said warrant was paid by defendant, the county court on investigation discovered the falsity of the claim and that Ross had already been paid all and more than was justly due him under said road contract; that thereupon the county court, by order duly made and served on defendant, cancelled and annulled said county warrant and directed defendant as treasurer not to pay the same. The defendant disregarded this last mentioned order and paid said county warrant to Ross out of the county road funds amounting, with interest, to about $23,000. Plaintiff also alleged that shortly after

this county warrant was issued to Ross and before its payment, it brought a suit against Ross and the sureties on his road contract bond to recover the excess payment which Ross had received over and above what was justly due him on said contract, which suit was compromised, settled and dismissed on an agreement reached by the attorneys representing the respective parties, and which settlement agreement included the surrender and cancellation of the county warrant now in question. It is claimed by defendant (not a party to that suit or the settlement, but merely reflecting Ross's contention) that this compromise was never fully consummated, but was tentative only, and that Ross had a right, as he did do, to withdraw his offer of compromise. It was shown, however, that the matter of compromise and settlement of the controversy between Jackson County and Ross as to whether Ross had been overpaid for the road work done by him had progressed so far that the following writing was executed and signed by the attorneys representing the respective parties litigant, to-wit:

"MEMORANDUM

"The general arrangement *in re* compromise between Jackson County and the Messrs. Ross is as follows:

"(1) Outstanding 1920 Special Road & Bridge Fund warrant, aggregating upwards of $20,000, including interest, to be surrendered for cancellation.

"(2) Full formal release and final settlement agreement to be executed and approved. This is to cover all roads and work."

This attempted compromise settlement was made sometime in 1922 before the order of the county court cancelling and annulling the county warrant in question was made in December of that year.

The answer in this case was a general denial, and set up an affirmative defense, but as no evidence was offered by defendant, this defense went out of the case. The court gave a peremptory instruction at the close of the case to find for defendant, and judgment went accordingly.

This case did not break in the trial court on the binding effect of the compromise agreement mentioned, made in the case then pending. While the case then pending to recover the claimed overpayment by the county to Ross, which over-payment included the amount covered by the county warrant now in controversy, was dismissed by the county on the faith of this compromise settlement, yet the defendant Ross withdrew from and refused to carry out the compromise agreement, of which fact the plaintiff had notice before dismissing the suit and its doing so was purely voluntary. Ross offered to proceed with the trial of that case, refused to surrender the county warrant in controversy for cancellation, and then and now

insists that such warrant is valid and represents a valid indebtedness to him.

In the view which the trial court took of the case, the binding effect of this attempted compromise settlement was left undetermined and we have mentioned it largely to show the conditions and status of affairs with reference to this disputed warrant at the time the county court in December, 1922, made its order cancelling the warrant and ordering the defendant county treasurer not to pay the same. At the time of making such order the county court had not only investigated and caused the then highway engineer to measure and ascertain the amount of work done by Ross under his road contract, and brought suit to recover the excess paid to him for such road work, but the county court had before it the memorandum of agreement for the compromise settlement which, if carried out, would have the effect of a surrender and physical cancellation of this warrant.

The defendant county treasurer then, as now, and doubtless at the insistence of Ross's attorneys and after much hesitation, took the position that the county court, after having issued this county warrant, and that term of court having passed, had no authority to make an order cancelling and declaring void this county warrant on the ground that same had been issued on false representations as to the consideration thereof, and that it was his duty to pay the warrant when funds came into his hands with which to do so regardless of such countermanding order of the county court. It should be noted that the warrant in question was not paid at once, but was protested for want of funds when first presented; that the order of the county court cancelling and annulling the warrant was not made till a year after its issuance and that such warrant was not actually paid till some four years later. During this interval one county counsellor of Jackson County took the position, and so advised the defendant, that the order of the county court recalling and annulling this warrant was valid and binding and advised defendant not to pay the same; and a later county counsellor took a different view, at least to the extent that it was defendant's duty "to pay this warrant on presentation unless the warrant was illegal or fraudulently issued." This county counsellor then suggested that defendant take a good and sufficient surety bond to protect himself and Jackson County and that "upon the execution of such a bond that you pay this warrant." The defendant acted on this suggestion, took a bond to protect himself against loss, and paid the warrant. It is not shown who furnished this bond, but presumably the contractor, Ross, did so.

The trial court heard plaintiff's evidence which showed the contract entered into by Jackson County with defendant, W. A. Ross,

for the construction of a public road in that county according to plans and specifications on file at prices based on different kinds of work such as loose earth, partial rock formation, solid rock, etc., and to furnish different kinds of material to be used at certain prices; that partial payments were to be made from time to time as the work progressed on estimates made by the highway engineer of Jackson County, under whose supervision the work was to be done; that several such estimates were furnished and warrants issued and paid to Ross aggregating approximately $70,000; that the county then ordered the work stopped before completion for lack of funds, at which time a full and final estimate of all work done and material furnished was made by an assistant county engineer and signed by the highway engineer. This showed a balance due to Ross as contractor of approximately $19,000. The county court accepted this estimate and computation as correct and issued the warrant now in question. This warrant was presented by Ross for payment and protested for want of funds. Information later reached the county court that the estimates presented to the county court by Ross were inaccurate and grossly excessive as to the amount of different kinds of work done and material furnished by Ross and the amount due him therefor. The county court then caused investigations, survey and measurements to be made and convinced itself that it had been deceived and imposed on in auditing the account with Ross and issuing warrants to him for this road work and had in fact paid and issued warrants to him to the amount of over $26,-000 in excess of the amount actually due. Thereupon the suit before mentioned was instituted by plaintiff to recover from Ross and his bondsmen this excessive payment, which included the warrant in controversy for about $19,000 not yet actually paid, and offering in said suit to deduct from the amount sued for the amount of this unpaid warrant if same should be asked and the warrant surrendered for cancellation. We have already narrated the attempted compromise of that case and the result. Plaintiff also put in evidence the order made by the county court on December 20, 1922, reciting that the Ross warrant for $19,000 registered October 1, 1920, "be and the same is hereby cancelled and annulled and is no longer an obligation or liability of Jackson County, Missouri," a copy of which order was filed with the county treasurer and entry made in red ink on the warrant register showing its cancellation by order of the county court. Payment of this warrant by defendant was shown to have been made January 1, 1925.

When these and other pertinent facts were shown by plaintiff, the trial court, without waiting till plaintiff concluded its evidence, made this announcement:

"THE COURT: Well, I would like to give you my opinion about this case now.

"The sole question for determination in this case, it appears to the court, is whether or not the county court had the legal and lawful authority to cancel the warrant in question.

"The plaintiff's petition alleges, and the proof shows that the warrant in question was legally issued by the county court on the 1st day of October, 1920; that on the 20th day of December, 1922, two years later, and at a subsequent and different term of said court than the one in which said warrant was drawn and issued, said county court without having the warrant in their possession made an order *sua sponte* purporting to cancel said warrant. Sections 9541-2 and 3, Revised Statutes of Missouri 1919, prescribed the statutory method of cancellation of warrants, and when the county court is empowered so to do. Section 9578 provides a penalty for county treasurer failing to cash warrants when lawfully issued, and there is cash available to pay same, said penalty consisting of damages as well as forfeiture by the treasurer of his office.

"After mature consideration and investigation of the decisions and authorities, the court is of the opinion that the county court had no lawful or legal authority to cancel said warrants under the facts of the case at bar; that said cancellation was a matter for judicial determination by a regularly constituted judicial body and necessitated a trial, after the notification of the parties litigant.

"That the county court of Jackson County had no such judicial power and the purported cancellation was of no effect.

"That the county treasurer is a ministerial officer, and that as such an officer, it was his duty under the statutes and decisions to cash said warrant upon due presentment.

"It is further the opinion of the court that the proper procedure under the facts of the case at bar would have been the institution of a suit in equity by the county court praying for a cancellation of the warrant, and an order restraining the treasurer from paying the same. Under such procedure the treasurer would have been protected as against any forfeitures or penalties provided for in the event of his failure to carry out his ministerial duty.

"To which action and ruling of the court plaintiff then and there at the time duly excepted and still excepts."

This clearly indicated the views of the trial court as to the law applicable to this case and put a stop to further evidence, although the court permitted plaintiff to offer to prove by the then county surveyor and highway engineer and by other witnesses that they were familiar with the road work in question, had examined and inspected the road construction work done by Ross on this road, had made measurements of the different kinds of work actually done,

and the charges made therefor, had compared the work actually done and material furnished with the plans and specifications and with the accounts and estimates furnished the county court by Ross in making his settlements and on which the warrants, including the one in question, were issued, and that such accounts and esti· mates were not correct but largely in excess of the actual work done, which offered proof would show that the amount paid to Ross constituted an over-payment, particularly the warrant now in question. These offers of proof were rejected by the court as not supporting any issue in the case. Thereupon the court gave a peremptory instruction to the jury to find for defendant.

We are of opinion that the trial court took an erroneous view of the law on the facts of this case and erred in giving the peremptory instruction to find for defendant. In effect, the ruling of the trial court is that when a claim against the county is presented for auditing and payment and the county court acts on the matter, allows the claim and orders a warrant issued and same is issued, such action is final, cannot be reopened or the order rescinded or modified, except perhaps at the same term of the county court, and that an order made at a subsequent term of the county court annulling the former order and cancelling the warrant issued, though same is not paid, is itself a nullity and should be disregarded by the county treasurer. If, of course, the county treasurer should pay such a warrant so issued without such action of the county court, it is a complete protection to him since he is a mere ministerial officer and not required to inquire into the validity of the warrant, but that is not the question here. Here the auditing body given the power to issue the warrant as representing a just indebtedness ascertains to its own satisfaction that the warrant does not represent a just and valid indebtedness of the county and that the court in ordering same issued acted on false information or was mistaken as to the facts, rescinds its action in issuing the warrant and declares it void and not a valid obligation of the county. In doing this the county court as fiscal or auditing agent of the county treats the warrant issued as an evidence of indebtedness much like a check or promissory note of the county, which it may properly repudiate and refuse to pay for want of consideration or other valid defense. Since such county warrants are not negotiable, though assignable, the rights of innocent purchasers for value and without notice of any infirmity cannot be thereby involved. To hold that the county court cannot do this is to hold, in effect, that the action of the county court in auditing the claims against the county and ordering warrants issued in payment thereof is in the nature of a judicial hearing and the action taken is a judgment final in its nature unless appealed from or set aside and

annulled by another judicial proceeding had for that purpose. This idea was emphasized by the trial court in saying that the action taken by the county court in this instance to annul the county warrant in question was taken at a subsequent term of the court, thus treating the power of such court to take any such action as ending with the term at which the warrant was issued, such being a limitation on the powers of courts generally over their judgments; and the further holding that the cancellation of the warrant issued by the county court was a matter "for judicial determination by a regularly constituted judicial body and necessitated a trial after the notification of the parties litigant." We can agree, however, with the trial court's holding that the County Court of Jackson County had no such *judicial* power, but not that it had no such nonjudicial power; nor with the conclusion that the purported cancellation was of no effect. The error of the trial court lies in holding that the county court acted judicially both in ordering the warrant issued and in ordering it cancelled, whereas neither was a judicial act in the sense of being *res adjudicata.*

The power and authority of county courts and the capacity in which such body acts in auditing and paying claims against the county has been before this court for decision many times. We think that it is now well settled that county courts do not act judicially in allowing, adjusting or refusing claims presented against the county or necessarily arising from managing its financial affairs. While such body does not act in a purely ministerial capacity in such matters, in the sense that they act without investigation and have no discretion in the matter, yet they do not try the merits of the claim as a court, but rather act as auditing financial agents of the county whose action is not final in the sense that a judgment of the court is final except on appeal or by other appropriate remedy.

By our Constitution county courts are created and are given jurisdiction to transact all county business (Art. 6, Sec. 36). By statute, Section 2078, Revised Statutes 1929, such courts are given power "to audit and settle all demands against the county." And Section 12162, Revised Statutes 1929, provides that "the county court shall have power to audit, adjust and settle all accounts to which the county shall be a party; to order the payment out of the county treasury of any sum of money found due by the county on such accounts." The county court, when it ascertains any sum of money to be due from the county, shall order the clerk to issue a warrant in a prescribed form (Sec. 12163, R. S. 1929). And the county treasurer "shall receive all moneys payable into the county treasury, and disburse the same on warrants drawn by order of the county court" (Sec. 12136, R. S. 1929).

The question here presented as to the binding effect of a county warrant regularly issued by the county court received full consideration by this court in Sears v. Stone County, 105 Mo. 236, in which it appears that Stone County had employed one Heffernan, a lawyer, to perform legal services for the county. In due time Heffernan presented to such county court his claim for legal services rendered amounting to $450 and the county court by proper order allowed the claim for that amount and ordered a warrant issued. Just how or why the warrant so issued was not paid is not shown, but the holder was driven to a suit against the county on the warrant. The county defended on the ground that the warrant was issued without consideration. No charge of actual fraud committed in procuring the warrant was made. The plaintiff claimed that the order of the county court in allowing the claim and ordering the warrant issued constituted an adjudication or at least was binding as to the amount and validity of the claim and the warrant issued therefor, and that this matter could not be again questioned. The court stated the issue raised thus: "The proper determination of this case depends upon whether county courts, in auditing claims, and ordering warrants against the counties, act in a judicial capacity thus giving to their orders the verity and conclusiveness of judgments, or whether they act merely in the character of financial or administrative agents of the counties by which their acts entered of record have simply the force and effect of contracts which are subject to impeachment for want of consideration."

The court then reviewed the Missouri cases on this subject up to that date, among them Reppy v. Jefferson County, 47 Mo. 68, where it was held that the rejection of a claim against the county was not binding on the claimant in a suit brought on the rejected claim, and to be *res adjudicata* both parties must be bound or neither. The court in that case said: "The county court, in auditing claims against the county, is but its financial agent, and not a judicial body. It represents the county, and in the numerous prosecutions against it, from the earliest times, it has never been held that a rejected claim was *res adjudicata*. [Cases cited.]"

And the court mentioned Gammon v. LaFayette County, 79 Mo. 225, where this court had said: "It [the statute] constitutes the county court the agent of the county to audit and settle demands against the county, and, although an appeal is allowed to the circuit court from the rejection by the county court of a demand against the county, yet, in the first instance, it is not strictly speaking a suit in the county court."

And in Railroad v. St. Louis, 92 Mo. 165, it is said: "These [county] courts are but the agents of the counties in the allowance of accounts."

The court in Sears v. Stone County, supra, then pointed out that in some decisions of this court language was loosely used indicating a contrary view and that the allowance of a claim against the county was binding on the parties, but really not so holding—a remark which may be applied to some later decisions. The correct doctrine was then announced as follows: ''The jurisdiction, powers and duties of county courts must be limited to those granted and defined by the law. . . . Among the others, power is given them 'to audit, adjust and settle all accounts to which the county shall be a party.' The words used in conferring this power, 'audit, adjust and settle,' are words commonly used in reference to settlement of accounts in simple business matters, and do not imply in any respect an adjudication of a controversy between the county and a citizen.

''In auditing accounts there is no part of the proceeding which takes the form of a judicial proceeding. 'No petition is filed, no parties are summoned to answer the demand and no issues are triable by a jury, except in the court's discretion.' [Gammon v. LaFayette County, supra.] It is true, in a certain sense, they act judicially, when they decide upon claims against the counties, but not more so than the auditor or financial agent of a corporation or firm when he passes upon an account presented. It is true also that the right of appeal is given in case the account presented against the county or any part thereof be rejected. . . . This appeal is specially provided and would be altogether unnecessary if the rejection of an account constituted a judgment. . . . The statute allowing appeals from their action in rejecting accounts could only have been intended to provide a convenient and inexpensive method for having a judicial determination of a matter about which the parties are unable to agree. That could hardly be called a judicial proceeding, in which the agent of one party sits in judgment upon the rights of the others.

''It has been held by this court through an unbroken line of decisions since the case of Marion County v. Phillips, 45 Mo. 75, that the action of the county court in making settlements with county officials is not judicial, but that, in such cases, the judges act merely as the fiscal or administrative agents of the counties. [State v. Roberts, 60 Mo. 402; State v. Roberts, 62 Mo. 388; Cole Co. v. Dallmeyer, 101 Mo. 57; State v. McGonigle, 101 Mo. 353.] The action of county courts in auditing accounts is given no more sanctity by the law than that exercised in making settlements with county officers, and their orders are not entitled to be clothed with superior verity. . . .

''We are well satisfied that the protection of the public from the mistakes, carelessness, incompetency or misconduct of public auditing boards is best subserved by an adherence to the rule which has been

adopted in this State, and followed so many years. . . . Our conclusion is that the judges of the county court in ordering the warrant sued upon were simply acting as the financial agents of the county, and the warrant has no more force or effect than the promissory note of the county, if authorized, would have, and was subject to the defense of a want of consideration.''

This case has not been overruled, but approved many times, and the same doctrine was restated in State ex rel. v. Diemer, 255 Mo. 336, 351, in this language: ''In the allowance of claims against a county or in settling with county officers, county courts do not act so strictly as a court, or in the performance of a judicial function, and their allowance or disallowance of a claim is *res adjudicata*. Something of substance might be said in favor of the contrary theory, but at an early day this court considered our statutes and announced the doctrine, on the reason of the thing and because of a good public policy, that county courts in the allowance of claims, as in settling with officers, acted as a mere public board of audit, as ministerial, administrative or fiscal agents for the county and not strictly as a court, hence we have uniformly refused to apply the doctrine of *res adjudicata* to their orders allowing or disallowing claims against the county, or to their settlements with county officers. That doctrine has always been adhered to and must be accepted as settled.'' Many cases are cited. And at page 354 the status of a county court in auditing, adjusting and allowing claims against the county is aptly defined thus:

''The premises considered it becomes apparent that, although we have held that in the matter of allowing claims against the county they act in a public ministerial, administrative, or auditing capacity, yet in their performance of ministerial duties in allowing claims their acts partake of the nature of judicial acts and are so related thereto in color and substance that they may be deemed not inaptly quasi-judicial.''

See State ex rel. v. Hamilton, 312 Mo. 157, 172.

State ex rel. v. Williams, 232 Mo. 56, is in point in that after the county court had issued a salary warrant ''the Attorney-General of the State was called upon and gave a written opinion to the County Court of Nodaway County, which was the fiscal agent thereof, to the effect that the act in question was unconstitutional, null and void, and that said court informed relator (county treasurer) of said opinion, and notified him not to pay the warrant mentioned in the pleadings; and that if he did so, he would be held liable upon his bond for the amount so paid thereon.'' The county treasurer obeyed this last order and refused to pay the warrant. Being a suit in mandamus, this court said: ''In the light of those disclosures, the respondent not only had the legal right to raise the

constitutionality of the act, but under those facts it became his legal duty to do so, otherwise he would have paid the warrant at his peril.''

It will be noticed that the courts have frequently likened the orders of county courts allowing claims and the county warrants issued thereunder to checks, drafts or promissory notes of the county, the enforcement or collection of which may be resisted by the county for good cause, such as want of consideration. We think that from the reason of the thing and the analogy of such warrants to checks or drafts drawn by the county, the formal action of the county court in ordering a warrant cancelled, at least where a third party such as the county treasurer is concerned, on information that such warrant does not represent a valid indebtedness of the county and should not be paid, would be, when necessary to protect such third party or the funds in his hands, perfectly proper, and has the same effect as stopping payment of a check or draft by notice to the party called on to pay same.

Such also is the rule of courts in other jurisdictions whose laws are similar to ours in relation to handling county finances—auditing, allowing and paying claims by a constituted body, whether called county supervisors or county courts, by issuing warrants on the county treasury. The language of the court in Harrison County v. Ogden, 165 Iowa, 325, is so apt that we quote therefrom:

''The board of supervisors are the financial agents of the county, charged, under the statute, with general care and management of the county property, funds, and business. The county treasurer, under Section 482, is charged with the duty of receiving money payable to the county and disbursing the same on warrants drawn and signed by the county auditor, and not otherwise, and it is his duty to keep a true account of all receipts and disbursements and hold the same at all times ready for the inspection of the board of supervisors. The basis for the warrant is the order of the board. It is but the evidence of indebtedness. It is prima-facie evidence that the county is legally indebted to the holder of the warrant, but is not conclusive upon that point. They are not negotiable, but may be assigned under the statute, but, in the hands of the assignee, are subject to all defenses which exist in favor of the county. The money in the hands of the treasurer is subject to the order of the board. He is only a disbursing officer. The warrant is his authority for disbursing, but, before the disbursement has been made, the order for disbursement may be recalled, and, the warrant being based upon an order of the board of supervisors, the board, having control of the funds out of which the warrant may be paid, may prohibit the treasurer from using the funds for that purpose by proper order made upon him. This does not destroy the debt, if any, legiti-

mately existing, but it prohibits the treasurer from disbursing the money upon the order, evidenced by the warrant as originally made; that is, it prohibits the treasurer from using the county's funds in his hands, which are subject to the order of the board, in payment of the warrant. This becomes more apparent when it is remembered that the warrant is not an indebtedness; that by the issuance of the warrant no new debt is created; that they are but the evidence of a pre-existing indebtedness, and constitute no final adjudication, as against the county, of the claims which they represent. . . .

"This order for the payment of money having been rescinded by the board of supervisors, under whose control the property and money of the county is, the right of the treasurer to pay the county's money upon the order so rescinded ceased as soon as he received notice of such order. His authority to pay upon the warrant was taken away by the board, from whom he, in the first place, obtained the authority to pay."

In the State of Oregon where the functions and duties of the county court and treasurer are similar to those of Missouri, the county court ordered the treasurer not to pay a warrant which had been issued, giving no notice whatever to the holder of the warrant. The holder of the warrant then brought an action in mandamus to compel the payment of the warrant. The treasurer set up the order of the county court as a defense. The court sustained him and refused to issue the writ, saying (Frankl v. Bailey, 50 Pac. 187, l. c. 188):

"The county court is charged, under the statute, with 'the general care and management of county property, funds, and business where the law does not otherwise expressly provide.' [Hill's Ann. Laws Or., subsec. 9, Section 896.] By Section 2460, Id., it is provided that 'the county treasurer shall receive all moneys due and accruing to his county, and disburse the same on the proper orders issued and attested by the county clerk.' The warrant in question was directed to be issued by the county court, and the legitimate basis for such warrant was the order of the court settling and allowing plaintiff's demand against the county. As we have seen, the alternative writ shows that the court was acting merely as the fiscal agent of the county in making the settlement and entering the said order. Such being the case, the order cannot be said to rise to the dignity of an adjudication as between the claimant and the county. While the orders of the court acting in such a capacity may have the force and effect of accounts stated as against the county, . . . the court could, if it saw fit, as an individual might, refuse to observe the obligations thereby imposed, in which case the only remedy left would be an action against the county to require their due observance. It has been held in a late case that warrants such as here exhibited

are but evidence of indebtedness, and constitute no final adjudication, as against the municipality, of the claims which they represent. They afford prima-facie evidence that the municipality is legally indebted to the holder thereof, but do not conclude it on that point, and that, in effect, they are nothing more than non-negotiable promissory notes, open to all defenses in the hands of the holders available as between the original parties, but that they may be made the basis of an action against the county. See Goldsmith v. Baker City (Ore.), 49 Pac. 973. Now the county court, having charge of the county funds has directed the county treasurer not to pay this alleged obligation of the county, which is an indirect way of disavowing the county's liability; and, as the warrant is not based upon an order having the binding effect of a judgment against the county, we can see no reason why the treasurer is not precluded by the prohibitory order from using the county funds in discharge of the warrant. It is the duty of the treasurer to disburse the funds upon 'the proper orders, issued and attested by the county clerk.' But here is a warrant which the court has determined—and we must presume for some legitimate reason—should not be paid, and therefore not proper to be honored by the treasurer.''

See also People v. Klokke, 92 Ill. 134.

In State v. Cook, 43 Neb. 318, 324, involving the payment of a warrant drawn on a city treasurer and later annulled by a like order, the court said: ''This must be true when the body allowing the claim has not been given authority to act judicially in determining the legality of the claim. While money remains in possession of the treasurer, the authorities having the power of disposing of the same have entire control of it, and the rescission of an order directing its payment before the payment is in fact made is, as between the holder and the treasurer, a defense to the latter.''

Defendants have cited a number of cases, most if not all of them being suits in mandamus to compel ministerial officers to pay county warrants, in which it is claimed that this court has held that the issuance of such warrant by the county court involves a judicial finding of its validity binding on the county court and which cannot again be opened up or inquired into. Mandamus is a short cut in legal procedure where the ordinary procedure is less adequate and therefore held inadequate, but in such procedure questions of fact going to the merits may be inquired into as well as questions of law. The case most relied on by defendant is State ex rel. v. Treasurer of Callaway County, 43 Mo. 228. In that case the county court had allowed a claim and issued a warrant. Later the county court made a further order reducing the amount of the claim and ordering only the reduced amount to be paid. The amount deducted was a definite amount for a distinct item of service

which the county court decided was not lawfully payable. Mandamus was brought to compel payment of the warrant as originally issued. What this court did do was to examine into the lawfulness of the payment of the rejected item, and, finding it lawful and justly due, ordered the whole warrant to be paid. The decision itself and most of the opinion is in accord with the later rulings of this court. This case is not among the cases reviewed in Sears v. Stone County, 105 Mo. 236, supra, but what is there said of Bank v. Franklin County, 65 Mo. 112, and State ex rel. v. Macon County Court, 68 Mo. 49, applies to State ex rel. v. Treasurer of Callaway County, to-wit: "So it is evident that when the court says, in the Franklin County case, that the order for the issuance of a warrant is a judicial ascertainment of the amount owing by the county, it is not meant that the order of the county court has the effect and conclusiveness of a judgment." The further remark of this court in the Callaway County case, "But where the allowance by the court has been regularly had upon a claim they are required to pass upon, and the warrant has been drawn and presented, and the court adjourned for the term, the treasurer has but one duty; and no subsequent court, not of superior jurisdiction, can excuse him from the performance of that duty," has not been followed in later rulings of this court but has been virtually overruled. The court, however, further ruled correctly in saying: "But in entertaining the application [for mandamus] we will look into the claim allowed by the court. It does not follow that, because it is the duty of the treasurer to pay, we will necessarily, in this form of action, order him to do so. If it should appear that the county court has, by mistake or otherwise, audited an illegal claim—one which should have been rejected—we will leave the parties to such remedies as they may have by ordinary proceedings."

State ex rel. v. Adams, 161 Mo. 349, does not involve the power of the county court to annul by later order its former order to issue a warrant. An examination of that case shows that the county treasurer of his own motion refused to pay a county warrant and when sued in mandamus set up a number of reasons why the county court should not have issued the warrant. So far from holding that the mere issuance of the warrant precluded any inquiry into its justness or validity, this court fully considered the objections raised and ordered the warrant paid only after determining that such objections were without merit.

Nor do we find State ex rel. v. Nelson, 310 Mo. 526, in conflict with what we decide here. As we understand that case, a drainage district had contracted to pay certain engineers for certain work, one-half to be paid "upon acceptance and adoption by the board of the report of the engineer as the plan of reclamation." The board of

supervisors issued warrants in payment of this one-half and in a suit in mandamus this court held that the issuance of the warrants in payment conclusively showed the acceptance and adoption of the plans submitted. Such acceptance and adoption of the plans fixed the liability of the drainage district to pay therefor, and whether the work of preparing such plans was efficiently done was no longer subject to inquiry. What the court there said as to the board "having the full power to pass upon and determine the obligation of the district with reference to the claims presented (under the terms of a legal contract), and having ordered the warrants issued in settlement of such claims, the liability of the district became fixed, as by the terms of the warrants, and no subsequent action of the board can change the status," was said with reference to the particular facts of that case and was a holding that it was shown that the drainage district had no defense to paying the warrants, and not that it was precluded from making such defense.

The trial court expressed his views that the plaintiff, instead of making the order annulling the warrant and stopping payment, should have instituted a suit in equity to have the warrant cancelled for fraud and restraining its payment. This is based on the idea that the allowance of the claim and issuance of the warrant by the county court was a judicial act final in its nature, unless corrected by appeal or set aside in equity for fraud. Such view is erroneous, as we have seen.

Insistence is made that our statute, Sections 12145, et seq., Revised Statutes 1929, provides when and how county warrants may be cancelled and that such provisions require the warrants to be physically present when cancelled and are exclusive. A reading of such sections shows that they apply to county warrants that are paid and have for their object the keeping of correct accounts of disbursements made of county funds and the prevention of a second presentation and payment of any such warrant. They have no application to the recalling and prevention of payment in the first instance of warrants outstanding and in dispute.

Much is said by respondent to the effect that fraud is the basis of this action, and that in no event is the county court justified in cancelling a warrant already issued by its order except on proof that the same was procured by actual fraud, and that no such proof is made here. What the plaintiff (county) desired to show, and what the trial court refused to hear, was that the contractor (Ross) had not performed the work and furnished the materials in the road construction work covered by the account presented to the county court and which it paid by issuing the warrant in question under the implied representation at least that same was correct. Such action by Ross amounts to fraud in law if not

in fact. It is true that the estimate of road work charged for was made by a deputy highway engineer and was signed and approved by the county highway engineer, but Ross, in whose behalf the account was made up and presented to the county court for payment, must be held to have approved and vouched for the correctness of the claim which he in law presented and in fact received a warrant in payment. Of course we are not prejudging defendant's ·case on the merits, but if the allegations of the petition are true and plaintiff can establish what it offered to prove, then there was at least gross mistake of the parties attendant on the issuance of the warrant in question, and that is enough to justify the county court's action in annulling the warrant. While county courts should not arbitrarily and without reason recall and order warrants already issued not to be paid, yet the public good will be best served by allowing large discretion to the county courts in such matters.

Much is also said as to the heavy penalties imposed on county treasurers as ministerial officers in refusing to pay county warrants regularly issued by the county and presented for payment. It is true that such ministerial officers are not and should not be required to investigate and determine for himself the legality or validity of such warrants and should ordinarily pay same without question. Here, however, the constituted authority which had caused this warrant to be issued, and whose order gave it birth and vitality, had taken on itself the responsibility of annulling its action and stamping out its life. The whole trouble here arises from the fact that this ministerial officer undertook to decide for himself that the action of the county court in issuing this warrant was a judicial act and a finality and that such court did not have the judicial power to set aside or modify its judgment after the term. That ministerial officers are not generally visited with penalties or held personally responsible when acting in good faith is held in State ex rel. v. Diemer, 255 Mo. 336. That they must at times assume some risk in the performance of judicial duties is unavoidable, and we commend defendant's action in taking a bond for his own protection on paying this warrant.

It is urged that on our finding that the defendant county treasurer wrongfully paid the warrant in question out of the county funds, we should enter judgment for the recovery of the amount so paid out with interest. This, however, is not the theory on which plaintiff tried the case. It not only alleges defendant's wrongful payment of the warrant after its annullment, but that at the time of its issuance the county court was not indebted to Ross and that this warrant does not evidence a valid indebtedness due him; that his claim for road work done and material furnished was false and excessive, and that plaintiff was wrong-

fully induced to issue this warrant for more· than or when nothing was actually due contractor Ross. We are holding that defendant's payment of the warrant after the county court's order annulling same was at his peril and that plaintiff was entitled to a trial of the issue of whether Jackson County was in fact indebted ·to Ross and if so, how much, for work done and material furnished under his road contract.

To that end the case should be reversed and remanded and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.